Douglas **PARKER, Plaintiff–Appellant,**

v.

**SONY PICTURES ENTERTAINMENT, INC. and Columbia Pictures Industries, Inc., Defendants–Appellees.**

**Docket Nos. 00–9198(L), 00–9454(CON).**

United States Court of Appeals, Second Circuit.

Argued June 4, 2001.

Decided Aug. 3, 2001.

---

Stanley N. Futterman, New York, NY, for Plaintiff–Appellant.

Lauren Reiter Brody, (Frances K. Browne, on the brief), Rosenman & Colin LLP, New York, NY, for Defendants–Appellees.

Before: WINTER, CALABRESI, and POOLER, Circuit Judges.

CALABRESI, Circuit Judge:

Plaintiff-appellant Douglas Parker lost his job with defendant-appellee Sony Pictures Entertainment, Inc. ("SPE") after a workplace injury led him to take a medical leave of absence. Parker claims that he was fired because SPE failed to provide the reasonable accommodation he needed to return to work. SPE claims that he never sought any accommodation and that it believed, accurately and based on Parker's own representations, that he was unable to return to work.

In a prior appeal, we reversed the district court's grant of summary judgment to SPE and remanded for trial. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir.2000) ("*Parker I* "). SPE having secured a jury verdict in its favor, Parker now appeals again, this time challenging, among other things, the district court's jury instructions and verdict sheet, as well as its order granting attorney's fees to defendants. We affirm the judgment for defendants on Parker's claims of disability discrimination, but we reverse the district court's award of fees.

### Background

The evidence at trial conformed in most relevant respects to that adduced at the summary judgment stage, and so we need not reiterate the full account of the facts carefully set forth in *Parker I*. In short, Parker took an extended medical leave as a result of a back injury in March 1995. SPE's period of guaranteed leave expired in September 1995, and SPE terminated Parker on September 15 when he failed to return to work after the expiration of his leave.

The primary dispute between the parties concerned Parker's ability to return to work at the end of his leave, and the extent to which he accurately informed SPE of that ability. Until just before the leave period expired, the medical reports submitted in support of Parker's temporary disability benefits from SPE stated that he was not able to return to work. In roughly the month prior to the expiration of Parker's leave, however, these reports became ambiguous. On the one hand, they omitted any specific bar on working and provided for increased levels of activity but, on the other, they characterized his condition as unchanged and never explicitly authorized a return to work. In later applications for SPE's long-term disability benefits and for Social Security Disability Insurance, Parker claimed to be "unable to work" and "completely incapacitated." According to Parker, however, he would have been able to return to his job at SPE if he had been permitted to work on a modified schedule, and his doctor agreed. Additionally, Parker claims, and SPE denies, that he orally requested that SPE allow him to return to work on a modified schedule.

Aside from his allegation that SPE engaged in disability discrimination by failing to provide him a reasonable accommodation, Parker also charges that his termination was part of an attempt by a new supervisor to purge the office of employees, including Parker, who were disloyal to her. Parker's theory is that the end of his disability leave provided his supervisor with a convenient means through which to discharge him.

At the summary judgment stage, the district court ruled that Parker's claims failed as a matter of law. It concluded that Parker's own statements about his condition precluded the possibility that he was capable of performing the essential functions of his job. And it further held that his claim to have been fired for disloyalty foreclosed the chance that he was fired because of his disability.

In *Parker I*, we disagreed. We ruled that "a reasonable jury could conclude that any total prohibition on Parker's returning to work ended in August 1995, and that he was capable of returning at least on a modified schedule at that time," *i.e.* that "with the temporary accommodation of part-time work, he was capable of performing the essential functions of his job at SPE." 204 F.3d at 336.

We also held that there was a triable issue of fact as to whether Parker was discharged because of disability as that concept is defined by the ADA. In particular, we ruled that "mixed-motive" analysis applies to ADA claims of discrimination by denial of reasonable accommodation, and so a plaintiff could succeed on his ADA claim where his "disability played a motivating role in the decision," even if another factor, such as a supervisor's desire to purge disloyal subordinates, also played a substantial role. *Id.* at 337.

Additionally, we concluded that SPE could not avoid ADA liability merely by characterizing its decision to terminate Parker as one taken "because he was unable to return to work when his six months' disability leave expired." *Id.* at 338. "Terminating a disabled employee . . . who can perform the essential functions of the job but cannot return to work because the employer has denied his request for reasonable accommodation, is disability discrimination under the ADA." *Id.* at 338. Accordingly, we found that there was a triable issue of fact as to whether SPE had discriminated by "ignor[ing] his request [for an accommodation], apparently conclud[ing] that he was wholly disabled, and terminat[ing] him upon exhaustion of his leave benefits." *Id.* at 338. Finally, we rejected a cross-appeal by defendant Columbia Pictures Industries ("CPI") in which CPI attacked the district court's denial of summary judgment on CPI's claim that it was not an employer of Parker.

On remand, the case proceeded to trial. After Parker rested, the district court granted judgment as a matter of law to defendants on two issues. It ruled (1) that Parker failed to mitigate his damages by accepting a lower-paying job and not actively seeking work with a salary comparable to what he had earned at SPE, and (2) that Parker failed to introduce sufficient evidence that he was an employee of CPI. Ultimately, the jury found, in response to a series of interrogatories on the special verdict sheet, (1) that, at the time of his discharge, Parker had a disability, (2) that he could *not* perform the essential functions of his job without a reasonable accommodation, (3) that he *could* perform the essential duties of his job *with* a reasonable accommodation, (4) that he requested a reasonable accommodation, (5) that such an accommodation would not have imposed an undue hardship on SPE, but (6) that SPE did not know at the time of his discharge that he could perform the essential functions of his job with a reasonable accommodation, and (7) that Parker's disability was not a motivating factor in SPE's decision to discharge him. Based on these verdicts, the district court entered judgment for defendants.

Subsequently, the court granted defendants' motion for attorney's fees. Despite our prior decision that a trial was required both on the issue of whether CPI was an employer and whether SPE's actions constituted disability discrimination, the district court ruled that Parker's positions on both issues were frivolous. In particular, it found that inconsistencies between Parker's statements in his applications for disability benefits and his claim that he was able to return to work demonstrated that he had "repeatedly lied," notwithstanding our prior ruling that these statements

were reconcilable and the jury's finding that, in fact, he was able to return to work with an accommodation.

## Discussion

On appeal, Parker challenges (1) the district court's grant of judgment as a matter of law on the issues of CPI's employer status and his mitigation of damages, (2) the jury instructions and interrogatories pertaining (a) to SPE's knowledge of his ability to work and (b) to whether his disability was a motivating factor in his discharge, and (3) the district court's award of attorney's fees. We conclude that the district court properly entered judgment for defendants on plaintiff's ADA claims based on the jury's finding that his disability was not a motivating factor in his discharge. (This ruling moots Parker's challenge to the district court's grants of judgment as a matter of law on the questions of employer status and of mitigation.) But, although we confirm the jury verdict, we also hold that the district court abused its discretion in finding plaintiff's claims so unreasonable as to warrant sanctions.

## I. The Jury Instructions and Interrogatories

Parker argues that he was entitled to have judgment entered in his favor based on the jury's findings (1) that he had a disability, (2) that he could perform the essential duties of his job with a reasonable accommodation, (3) that he requested such an accommodation, and (4) that providing the accommodation would not have placed an undue hardship on SPE.[1] Thus, he argues that neither the jury's negative answer to Question 7, which asked whether SPE had knowledge of Parker's ability to work with an accommodation, nor its

negative answer to Question 10, which asked whether Parker's disability was a motivating factor in his discharge, protected SPE from liability.

 We agree with Parker that an employer enjoys no blanket shield from ADA liability based on the employer's incorrect belief that no reasonable accommodation could enable the plaintiff employee with a disability to perform his essential job duties. This does not, however, answer the serious question, which exists in this case, as to whether plaintiff was himself responsible for SPE's misunderstanding of his abilities, and for the breakdown in the "interactive process" of assessing the feasibility of accommodations that is required by the ADA. *See* discussion *infra* concerning attorney's fees. In any event, because the jury's answer to Question 10 sufficed to defeat Parker's claim, we affirm the judgment against him.

### A. Standard of Review

"The formulation of special verdict questions rests in the discretion of the trial judge, and therefore our review is confined to inquiring whether the trial court's submission of the issues in the form of these questions constituted an abuse of discretion. We will reverse a judgment entered upon answers to questions which mislead and confuse the jury or which inaccurately frame the issues to be resolved by the jury." *Cann v. Ford Motor Co.*, 658 F.2d 54, 58 (2d Cir.1981) (internal citations omitted). Similarly, "a trial court has discretion in the style and wording of jury instructions," *Care Travel Co., Ltd. v. Pan American World Airways, Inc.*, 944 F.2d 983, 996 (2d Cir.1991), so long as the instructions, taken as a whole, do not "mislead[ ] the jury as to the proper legal

---

1. It is undisputed that SPE neither offered to provide any accommodation of Parker's dis-

ability nor investigated the feasibility of such an accommodation.

standard, or ... adequately inform the jury of the law." *Owen v. Thermatool Corp.,* 155 F.3d 137, 139 (2d Cir.1998) (internal quotation marks omitted).

■■■ Except in rare cases, we will consider only those claims of error in the jury instructions or verdict form that were raised with particularity in the district court. *See* Fed.R.Civ.P. 51; *Lavin McEleney v. Marist College,* 239 F.3d 476, 482 (2d Cir.2001). When the appellant's claims were not preserved below, we review the district court's actions only for plain error, which, in the civil context, means an error that "is so serious and flagrant that it goes to the very integrity of the trial." *Id.* at 483 (quoting *Pescatore v. Pan Am. World Airways, Inc.,* 97 F.3d 1, 18 (2d Cir.1996)).

## B. The Question on Disability as a Motivating Factor

Parker raises three challenges relating to the jury's finding in Question 10 that his disability was not a motivating factor in his discharge. He claims (1) that the jury's answer to this question was simply irrelevant to his claim of discrimination by denial of reasonable accommodation, (2) that, in any event, the court erroneously rejected his request to alter the wording of the question, and (3) that the instructions accompanying the question were erroneous and misleading.

### 1. The Relevance of the Motivating Factor Question

■■■ In employment discrimination cases that do not turn on the employer's provision of a reasonable accommodation, the plaintiff's ultimate burden is always to show that the protected characteristic in question "played a motivating role in, or contributed to, the employer's decision." *Renz v. Grey Advertising, Inc.,* 135 F.3d 217, 222 (2d Cir.1997). Parker claims that, in ADA cases in which the employer has

allegedly discriminated by failing to provide a reasonable accommodation, there is no such requirement. We disagree.

As support for his argument, Parker relies primarily on our statement in *Parker I* that an ADA plaintiff may establish a *prima facie* case of discriminatory discharge by

> demonstrating that: 1) [the plaintiff] was an 'individual who has a disability' within the meaning of the statute; 2) the employer had notice of his disability; 3) he could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation.

*Parker I,* 204 F.3d at 332. We there stated further that "failure to make reasonable accommodation, when the employee has satisfied the first three elements of his claim, amounts to discharge 'because of' his disability." *Id.*

It is true that these passages in *Parker I* do not refer to any requirement that plaintiff prove a causal connection between his employer's failure to provide a reasonable accommodation and his discharge. But we do not believe that this omission establishes that no such requirement exists. In *Parker I* we were focusing on a somewhat different issue. That question was whether firing an employee because of performance-related deficiencies (such as failure to return to work at the end of a period of leave), where those deficiencies were themselves caused by failure to provide a reasonable accommodation, provides the requisite causal connection between a disability and an adverse employment action to support ADA liability as discrimination "because of disability." We held that it does. *Id.* at 338 ("Failure to consider the possibility of reasonable accommodation for ... disabilities, *if it leads to discharge for performance inadequacies resulting from the disabilities,* amounts to a

discharge solely because of the disabilities.") (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 143 (2d Cir.1995) (emphasis added)).

Accordingly, in *Parker I*, we simply assumed (for purposes of summary judgment) (a) that Parker was unable to return to work *because* SPE did not provide a reasonable accommodation, and (b) that SPE fired Parker *because* he failed to return to work, *see id.* at 338 ("SPE claims that it fired Parker ... because he was unable to return to work when his six months' disability leave expired."). Such a causal connection between disability and discharge satisfies the "motivating factor" requirement. But the *connections* between (1) the failure to accommodate a disability, (2) the performance deficiencies, and (3) the adverse employment action, must still exist for there to be liability. *See Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1032–33 (7th Cir.1999) (holding that, in reasonable accommodation cases, the plaintiff must show that "the disability caused the adverse employment action" and noting that "[t]his ... element is frequently left unstated because employers will concede that the disability was the reason for the job action but will argue the 'otherwise qualified' or 'reasonable accommodation' issues").

▮ Thus, if an employer failed to provide an accommodation to an employee who needed that accommodation to return to work, but, for whatever reason, the employee did not return to work for reasons entirely unrelated to the refusal of the accommodation, then the ADA's prohibition on taking adverse employment actions "because of disability" would not be violated. The same would be true when an employer terminated an employee who—because of the absence of an accommodation—could not return to work, if the employer terminated the employee for rea-sons entirely unrelated to his failure to return to work.

▮ Of course, as we held in *Parker I*, "plaintiff need not demonstrate that disability was the sole cause of the adverse employment action," 204 F.3d at 337, and so the "motivating factor" requirement would be satisfied when both the lack of an accommodation and some other factor played a role in the employee's failure to return to work, or when both the failure to return to work and some other factor played a role in the employer's termination decision. Nonetheless, it remains essential to a finding of discrimination that plaintiff's disability, or the lack of accommodation to that disability, played a "substantial" role that "made a difference" to his employer's actions. *Fields v. New York State Office of Mental Retardation and Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir.1997).

▮ Here, the jury found that plaintiff's disability was not a motivating factor in SPE's decision. So long as there was nothing misleading about the verdict form that elicited this finding or the instructions that guided it, the district court was entitled to rely upon the finding and to enter judgment for defendants.

### 2. The Verdict Sheet

▮ The jury question on the motivating factor issue was worded as follows: "Do you find, by a preponderance of the evidence, that plaintiff's alleged disability was a motivating factor in Sony's decision to discharge him?" The jury answered "no." At the charging conference, plaintiff had requested that this question be expanded to ask "Do you find by a preponderance of the evidence that plaintiff's alleged disability was a motivating factor in Sony's decision to discharge him *or was used by Sony employees to terminate*

*plaintiff's employment?"* (emphasis added). The court rejected this addition as "completely subsumed in what is on the page."

We agree with the district court that the question as it was submitted to the jury adequately placed the relevant issue before the jurors. The term "motivating factor" is a standard one in this area, *see, e.g.,* 42 U.S.C. § 2000e–2(m); *Fields,* 115 F.3d at 120–21, and the accompanying instructions adequately explained that "the requirement that [plaintiff] prove that the disability was a motivating factor in the decision does not require that he establish that the disability was the sole or even the principal reason for the decision" and that "[a] factor played a motivating role in the decision if it made a difference in the decision to fire the plaintiff." *Cf. Owen,* 155 F.3d at 139 & n. 1 (upholding district court's use of the phrase "substantial factor" and noting that "[w]hat is important is that the charge convey[ ] the idea that ... the factor need not have been the sole consideration motivating the employer's decision").

It is true that plaintiff's requested wording might have conveyed more clearly that the ultimate question was whether plaintiff's disability made a difference to SPE's decision-making, regardless of SPE's exact motives in considering Parker's disability. *See International Union, UAW v. Johnson Controls, Inc.,* 499 U.S. 187, 199, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991) (holding that Title VII liability "does not depend on why the employer discriminates"); *Gregory v. Daly,* 243 F.3d 687, 699 (2d Cir.2001); *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 264 (1st Cir.1999) (holding that when an employee with a disability is injured by his employer's failure to provide a reasonable accommodation, no additional showing of animus against persons with disabilities is required for ADA liability). But the instruction given was sufficiently clear that it was not an abuse of discretion to reject the proposed addition.

### 3. The Jury Instructions

Parker's last attack on Question 10 pertains to the jury instructions that accompanied the question. He alleges that, in conjunction with Question 7's inquiry into whether SPE believed that Parker could perform the essential duties of his job were he to receive a reasonable accommodation, the instructions accompanying Question 10 could have misled the jury. Specifically, he argues that the jurors may have been led into thinking that his disability was not a "motivating factor" in SPE's decision so long as SPE fired him based on its (false) perception that he was unable to do the job even with an accommodation. In this respect, plaintiff points to passages in the instructions explaining that "an employer may not terminate an employee because of a disability, but may terminate the employee because the employee is unable to do the job, even if the reason the employee cannot do his job is his disability." These passages do not point out that inability to do the job is *not* a legitimate basis for discharge when that inability stems from the employer's unjustified failure to provide a reasonable accommodation. *See Parker I,* 204 F.3d at 338. And they also do not make clear that what matters is the employee's actual abilities and not the employer's perceptions of them. As such, they might well have been misleading.

We need not, however, reach the merits of Parker's current challenges to these instructions because Parker failed to lodge any objection to them at trial. His only challenge to Question 10 concerned the wording of the question on the verdict sheet, and not the content of the accompa-

nying instructions. Nor did he ever state that the objections which he did make to Question 7 also applied to the instructions concerning Question 10. Assuming *arguendo* that asking Question 7 itself was erroneous (indeed even assuming that it was plainly erroneous), this would not mean that the instructions to Question 10 would also be plainly erroneous. For, the subtlety of plaintiff's argument as to why a Question 7 error infected Question 10 is sufficiently great that it precludes the possibility that any deficiencies in the Question 10 instructions were "so serious and flagrant that [they] go[ ] to the very integrity of the trial." *Lavin McEleney*, 239 F.3d at 483 (internal quotation marks omitted).[2]

### 4. The Evidence Supporting the Jury's Verdict

The jury may have answered Question 10 as it did because it concluded that the decision to fire Parker was based solely on his supervisor's determination to purge disloyal subordinates, and not on account of Parker's disability. There would be a certain irony in this finding, since it was plaintiff himself who put forward the theory that such a loyalty test was at play in this case, a notion that SPE has consistently disclaimed and that the district court at one point characterized as "a work of fiction." And plaintiff has always maintained that this theory was consistent with

his claim of disability discrimination because, without his disability, his supervisor would not have had the excuse, or the administrative authority, to terminate him. According to Parker, in other words, it was the *combination* of his perceived disloyalty and his disability that caused his discharge.

■ We need not, however, consider whether there was sufficient evidence before the jury to support the disloyalty—only theory of Parker's discharge. Plaintiff has not argued, either in the district court or on appeal, that the evidence at trial was legally insufficient to support the conclusion that the sole basis of his discharge was his perceived disloyalty and not his disability. Accordingly, he is not entitled to judgment as a matter of law on the question of whether his disability was a motivating factor in his discharge, and hence the jury's answer to that question must stand.

In sum, (1) Parker was required to show a causal connection between his disability and his termination, (2) Question 10 was an acceptable means by which to ask the jury whether such a connection had been proven, (3) Parker forfeited any objections to the way in which the jury was instructed to answer Question 10, and (4) Parker forfeited any objection to the sufficiency of the evidence to support the answer the jury gave. The jury's finding that Parker's disability was not a motivating factor

---

**2.** Parker seeks to excuse his failure to object by claiming that if the jury had found that he *could* perform the essential duties of his job even *without* reasonable accommodation, and that he had not even requested an accommodation—thus removing the reasonable accommodation issue from the case—then Question 10 would have properly inquired into whether, notwithstanding his ability to do the job, SPE had chosen to fire him on account of his disability. Because Question 10 would have been appropriate in these circumstances, Parker argues, he objected neither to its being

asked nor to the content of the instructions. The fatal flaw in this theory is that nothing in the instructions or the verdict sheet directed the jury to consider Question 10 only if the reasonable accommodation issue was removed from the case by the jury's answers to prior questions. To the contrary, the verdict sheet unconditionally directed the jury not to proceed to the questions relating to damages if it answered "no" to Question 10. Accordingly, Parker's theory cannot justify his failure to object below.

in his discharge therefore suffices to support the entry of judgment for defendants.

## II. Attorney's Fees

 The ADA provides that a district court "in its discretion, may allow the prevailing party … a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. This language is nearly identical to the analogous provision governing attorney's fees in employment discrimination cases litigated under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e–5(k), and we apply the same standard as under Title VII. *See Bercovitch v. Baldwin School, Inc.*, 191 F.3d 8, 10–11 (1st Cir.1999); *Bruce v. City of Gainesville*, 177 F.3d 949, 951 (11th Cir.1999). Under that standard, fees should be awarded to prevailing *defendants* only when the plaintiff's "claim was frivolous, unreasonable, or groundless, or … the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Application of this standard is entrusted to the discretion of the district court, and its decision will be reversed only when that discretion is abused. *See American Fed'n of State, County and Mun. Employees, AFL CIO (AFSCME) v. County of Nassau*, 96 F.3d 644, 650 (2d Cir.1996). We find such an abuse here.

First, the district court erroneously analyzed plaintiff's decision to pursue CPI as a defendant. At summary judgment, both the district court and the *Parker I* panel found that plaintiff had come forward with sufficient, though weak, evidence that Parker was CPI's employee, thus requiring that a jury resolve the issue. The district court discounted the significance of those rulings, reasoning that "the failure of CPI's motion for summary judgment was attributable to CPI's failure to prove a

negative, not to any substantial proof by plaintiff. At trial, however, the burden was on the plaintiff."

 The district court erred in its assessment of the relationship between the parties' burdens at the summary judgment stage and at trial. A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted). Thus, in determining whether the evidence suffices to allow a reasonable jury to find in plaintiff's favor, we apply the same standard to a pretrial motion for summary judgment as to a motion for judgment as a matter of law during or after trial. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Piesco v. Koch*, 12 F.3d 332, 341 (2d Cir.1993).

 Here, Parker entered into evidence at trial the same documents that he offered in opposition to summary judgment, plus some additional supportive testimony. Accordingly, he was entitled to rely on our decision in *Parker I* for the proposition that this body of evidence sufficed to meet his burden of producing evidence that would permit the jury to find in his favor. *See Piesco*, 12 F.3d at 341–42 ("[W]hen we have reversed the granting of summary judgment, the district court cannot properly grant judgment as a matter of law on the basis of trial evidence that is not substantially different [from that presented on summary judgment]."). And, where plaintiff produces evidence sufficient to support a jury verdict in his favor, we are extremely reluctant to conclude

that his claim was nonetheless "frivolous, unreasonable, or groundless." *See AFSCME,* 96 F.3d at 652 ("Generally, where evidence is introduced that, if credited, would suffice to support a judgment, fees are unjustified."). There were, in this case, no aggravating circumstances that rendered it improper for plaintiff to proceed to trial on a claim that was strong enough to get to a jury. Accordingly, our prior ruling on this exact question provided a good-faith basis for taking the issue to trial.

Second, even granting the considerable discretion owed to a district court in these matters, we cannot agree with the district court's conclusion that Parker's claims of disability discrimination were frivolous. The court premised its decision largely on its conviction that Parker's inconsistent statements in pursuit of this claim and of disability benefits reveal him to be a liar. In *Parker I,* however, we ruled that Parker's statements were not necessarily contradictory, given that his claims of inability to work in his applications for disability benefits did not necessarily address the more particular question of whether he could work in his old job *if SPE provided a reasonable accommodation.* The jury appears to have reconciled Parker's statements in just this manner, agreeing with Parker's litigation position that he *could* work if accommodated but also concluding that, at the time of its decision, SPE, which was relying largely on Parker's and his doctor's statements in his disability benefits applications, did not know this.

It follows that, to the extent the district court found that Parker lied when he claimed to be able to return to work if accommodated, the court's finding is flatly contradicted by the conclusions reached by the jury. As such, the court's assessment can hardly support the conclusion that *this claim* was frivolous or groundless. It may

be—consistently with the jury verdict—that Parker lied not in the proceeding before the district court but in his disability benefits applications. But once we ruled—as we did in *Parker I*—that his prior statements did not estop Parker from bringing this claim, any such earlier lie does not affect whether this suit was frivolous.

These inconsistencies aside, Parker had a strong claim of disability discrimination. SPE, after all, stated that it fired him because he was unable to return to work by reason of his disability. But the jury found that this was not true. SPE claimed that he never requested an accommodation. But the jury found that was not true either. Finally, the jury found that SPE could have accommodated him without an undue hardship. The fact that the jury ultimately found for SPE on other grounds—whose sufficiency Parker failed to challenge—hardly renders Parker's claims frivolous. *See AFSCME,* 96 F.3d at 650 (noting that district courts should "avoid 'engag[ing] in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation'" (quoting *Christiansburg,* 434 U.S. at 421–22, 98 S.Ct. 694)).

■■■ SPE claims that none of this matters and that Parker's claim was frivolous because he knew all along that SPE had not realized that he was able to return to work. It is, however, no defense to liability in a discrimination action to hold a good-faith, but erroneous, belief that the law permits taking an adverse job action on the basis of a prohibited factor. At most, such beliefs provide a defense against punitive damages. *See Kolstad v. American Dental Ass'n,* 527 U.S. 526, 536–38, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (explaining that liability for punitive damages requires "a positive element of con-

scious wrongdoing" and that "circumstances where intentional discrimination does not give rise to punitive damages liability" include situations in which "an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability"); *Gile v. United Airlines, Inc.*, 213 F.3d 365, 376 (7th Cir. 2000) (false belief that plaintiff was not disabled did not bar liability but did preclude punitive damages); *see also Johnson Controls, Inc.*, 499 U.S. at 198–99, 111 S.Ct. 1196 (holding that the intentional use of employees' sex in decision-making violated Title VII even if the employer's "asserted reason for the sex-based exclusion (protecting women's unconceived offspring) was ostensibly benign"); *City of Los Angeles, Dep't of Water and Power v. Manhart*, 435 U.S. 702, 719–20, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) (considering employer's good-faith belief in the fairness and legality of its practice as a factor relevant only to the scope of relief, not the existence of liability).

 The ADA is specifically meant to ensure that "truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps." *Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir.1997). This goal would be stymied by a blanket rule protecting employers that inaccurately believe that an employee's limitations cannot be surmounted by reasonable accommodations. To argue on the present record, as Parker has below and on appeal, that an employer violates the ADA when it terminates an employee based on the erroneous belief that his disability, even if accommodated, renders him unqualified for the job, is far from frivolous.

There is more merit in SPE's other argument about the relevance of its knowledge: that, even if an employer's appreciation of plaintiff's ability to work is not a prerequisite to liability, nonetheless the lack of such knowledge may, in a given case, be symptomatic of plaintiff's responsibility for a breakdown in the "interactive process" by which employees and employers must work together to assess proposed accommodations. *See generally* 29 C.F.R. § 1630.2(*o*)(3). Here, it was disputed whether the breakdown of that process should be blamed on plaintiff's failure to provide clear medical documentation of his ability to return to work with an accommodation, or instead on SPE's failure to make any response—including a specific request for such documentation—to Parker's request for an accommodation. *Compare Parker I*, 204 F.3d at 343 (Winter, J., dissenting) (noting that medical information from the employee may be needed for "an employer to evaluate whether an accommodation is needed or whether a request for a particular accommodation is reasonable"); *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1113 (9th Cir.2000) (*en banc*) (same), *cert. granted on another issue*, —— U.S. ——, 121 S.Ct. 1600, 149 L.Ed.2d 467 (2001), *with Parker I*, 204 F.3d at 338 ("[A]n employee who proposes an accommodation while still on short-term leave ... triggers a responsibility on the employer's part to investigate that request and determine its feasibility."); *Gile*, 213 F.3d at 373 (same); *see also, e.g., Templeton v. Neodata Servs.*, 162 F.3d 617, 618–19 (10th Cir.1998) (employee refused to release medical data to employer even when the employer explained that this data was necessary to its evaluation of whether she could return to work); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1073 (7th Cir.1998) (employer offered employee accommodation conditioned upon provision of a medical release but employee did not provide one).

Were the breakdown in the interactive process manifestly Parker's fault, his claim might be deemed frivolous. But in *Parker I* we held that there was a triable issue of fact as to whether "Parker's failure to produce a doctor's note clearing him for part-time work relieved SPE entirely from investigating that potential accommodation." 204 F.3d at 336 n. 4. Accordingly, it was not frivolous for Parker to pursue his claims to trial, even if the district court ultimately concluded that SPE was clearly right. *See AFSCME*, 96 F.3d at 652 ("[A] claim is not necessarily frivolous because a witness is disbelieved or an item of evidence is discounted, disproved or disregarded at trial.").

### Conclusion

Having considered all the parties' arguments, we AFFIRM the judgment in favor of defendants on plaintiff's ADA claims and REVERSE the judgment awarding attorney's fees to defendants.