21-2327-cv
*Tafolla v. Heilig*

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2022

(Argued: January 10, 2023    Decided: August 18, 2023)

No. 21-2327

_____

KIM L. TAFOLLA,

*Plaintiff-Appellant,*

— v. —

EDWARD HEILIG, DIVISION CHIEF, JOSEPH
CARROLL, COUNTY OF SUFFOLK,

*Defendants-Appellees.*∗

_____

Before:      SULLIVAN, BIANCO, and PÉREZ, *Circuit Judges.*

Plaintiff-appellant Kim Tafolla appeals from the judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*), granting summary judgment in favor of defendants-appellees County of Suffolk, Suffolk County District Attorney's Office Division Chief Edward Heilig, and Suffolk County District Attorney's Office Special Investigations Bureau Chief Joseph

---

∗ The Clerk of the Court is respectfully instructed to amend the caption to conform with the above.

Carroll. Tafolla was a Clerk Typist in the District Attorney's Office from 2008 until her employment in the Special Investigations Bureau was terminated in 2015. She alleged that defendants discriminated against her based on her disability and retaliated against her for seeking an accommodation for that disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law § 296, and 42 U.S.C. § 1983. Specifically, Tafolla asserted that defendants failed to reasonably accommodate her request to not be assigned archiving tasks based upon the medical documentation she provided to defendants regarding her physical limitations. Tafolla further alleged that defendants retaliated against her for making the accommodation request by forcing her to go on medical leave, which ultimately led to her termination.

On appeal, Tafolla argues that the district court erred in granting summary judgment on her reasonable accommodation and retaliation claims. We agree. Construing the evidence most favorably to Tafolla, a rational jury could find that archiving was not an essential function of Tafolla's position and that defendants failed to provide a reasonable workplace accommodation for her disability. We similarly conclude that disputed issues of material fact preclude summary judgment on Tafolla's retaliation claim. With respect to the Section 1983 claim against the County of Suffolk, because Tafolla has not presented any arguments on appeal challenging the district court's decision, we deem that claim abandoned and affirm.

Accordingly, we **AFFIRM** the district court's judgment as to Tafolla's Section 1983 claim and **VACATE** the district court's judgment with respect to the reasonable accommodation and retaliation claims. The case is **REMANDED** to the district court for further proceedings consistent with this opinion.

JUDGE SULLIVAN concurs in part and dissents in part in a separate opinion.

STEPHEN BERGSTEIN, Bergstein & Ullrich, New Paltz, NY, *for Plaintiff-Appellant*.

2

HOPE SENZER GABOR, Assistant County Attorney, *for* Dennis M. Cohen, Suffolk County Attorney, Suffolk County Department of Law, Hauppauge, NY, *for Defendants-Appellees*.

JOSEPH F. BIANCO, *Circuit Judge*:

Plaintiff-appellant Kim Tafolla appeals from the judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*), granting summary judgment in favor of defendants-appellees County of Suffolk (the "County"), Suffolk County District Attorney's Office Division Chief Edward Heilig, and Suffolk County District Attorney's Office Special Investigations Bureau ("SIB") Chief Joseph Carroll (collectively, "defendants"). Tafolla was a Clerk Typist in the District Attorney's Office from 2008 until her employment in the SIB was terminated in 2015. She alleged that defendants discriminated against her based on her disability and retaliated against her for seeking an accommodation for that disability, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and 42 U.S.C. § 1983. Specifically, Tafolla asserted that defendants failed to reasonably accommodate her request to not be assigned archiving tasks based upon the medical documentation she provided to

3

defendants regarding her physical limitations. Tafolla further alleged that defendants retaliated against her for making the accommodation request by forcing her to go on medical leave, which ultimately led to her termination.

On appeal, Tafolla argues that the district court erred in granting summary judgment on her reasonable accommodation and retaliation claims. We agree. Construing the evidence most favorably to Tafolla, a rational jury could find that archiving was not an essential function of Tafolla's position and that defendants failed to provide a reasonable workplace accommodation for her disability. We similarly conclude that disputed issues of material fact preclude summary judgment on Tafolla's retaliation claim. With respect to the Section 1983 claim against the County, because Tafolla has not presented any arguments on appeal challenging the district court's decision, we deem that claim abandoned and affirm.

Accordingly, we **AFFIRM** the district court's judgment as to Tafolla's Section 1983 claim and **VACATE** the district court's judgment with respect to the reasonable accommodation and retaliation claims. The case is **REMANDED** to the district court for further proceedings consistent with this opinion.

4

## I. Factual Background[1]

As a Clerk Typist, Tafolla performed "general office duties," including answering calls, typing various legal documents, and photocopying. Joint App'x at 140. Her responsibilities also included a task called archiving, which typically involved entering information from court files into a database after a prosecutor closed a criminal case. Following a car accident, during which Tafolla suffered a spine injury when her vehicle was rear-ended at a stoplight, she sent an email to SIB Chief Joseph Carroll dated December 6, 2013 ("First Accommodation Request") explaining that her "neck, back and ribs are extremely sore" and requesting that another employee temporarily take over her archiving responsibilities. *Id.* at 978. Carroll responded by asking Tafolla to provide a doctor's note indicating any necessary restrictions.

On December 10, 2013, Tafolla left a note from a physician assistant at her spine surgeon's office in Carroll's inbox. The note instructed, on separate lines, "-No lifting over 5 pounds, - No bending, pushing exercises" and that Tafolla would be revaluated in two months. *Id.* at 980. Carroll did not acknowledge the note

---

[1] The facts set forth below are drawn from the record on summary judgment. Any relevant factual disputes are noted.

until January 7, 2014, when he and an assistant district attorney asked Tafolla why certain files had not been archived. Tafolla responded that the note established that she was not physically able to do the archiving because of her injury. Carroll then told Tafolla that the note only restricted her from lifting files heavier than five pounds.[2] In particular, Tafolla testified:

> [Carroll] proceeded to say to me, oh, well, the doctor said that you couldn't lift files weighing over five pounds, when he proceeded to walk over to the desk in front of me and pick up one of the lighter files, and he was, like, mocking me, laughing at me, I don't think this file weighs five pounds, and he just kind of flung it back on the desk.

*Id.* at 189. Tafolla again explained to Carroll, "I think you're missing the point. . . . [M]y doctor's note does not just say that I cannot lift items weighing over five pounds. It says that I'm not supposed to be doing any bending or pushing exercises, and that I would be re-evaluated in two months." *Id.* at 190. According to Tafolla, Carroll kept "carrying on, ranting," and told her that she should "get a box, put it on the floor and sit in [her] seat and get it done." *Id.* at 190–91. When Tafolla again explained that she was not able to perform the "mechanics" of moving the documents from her desk to the floor, Carroll responded that, if Tafolla

---

[2] Carroll confirmed at his deposition that he understood the note to only restrict Tafolla's lifting, bending, and twisting with respect to objects weighing five pounds or more and that he conveyed to Tafolla that she should be able to handle files weighing less than five pounds.

6

was unable to complete the archiving, she would be transferred or put on disability:

> [Carroll] told me that if I was not happy here, he would be happy to find me another place to go. Now, that's when I said to him, I don't know what me being happy in SIB has anything to do with the injury that I sustained from my car accident. I said, I am perfectly happy here, and he said that if I did not do the archiving and I could not do my job the way it was intended to be done, that he would call Ed Heilig, my division chief[, and my union representatives], and I will get them over here and we will discuss having you moved[. Y]ou're going to get put out . . . I'm going to have you put out on disability, is what he said to me, and then I started to plead with him. Joe, I have a family. I have a rent payment, I have car payments, I have car insurance, I cannot afford to go out on disability. And he told me, well, then do your job.

*Id.* at 191. After the conversation with Carroll, Tafolla "did what he told [her]" and completed some archiving, which caused her pain. *Id.* at 192.

The next day, January 8, Tafolla called in sick and had an appointment with her spine surgeon, Dr. Robert M. Galler, who provided her with a formal letter to the County stating that Tafolla was "unable to lift, bend, twist, or push any object over five pounds" and that she was "able to perform secretarial work but no physical duties at this time." *Id.* at 983. When Tafolla returned to work on January 9, there were files piled in front of her desk.

7

About a week later, on January 14, after seeking advice from a union representative and attempting to avoid any additional archiving, Tafolla faxed an accommodation request, along with Dr. Galler's letter, to Human Resources ("Second Accommodation Request"). Immediately after receiving the Second Accommodation Request, Diane Stankewicz from Human Resources called Tafolla and informed her "that the [C]ounty doesn't offer light duty assignments, and that it would be up to [Carroll] whether or not he wanted to accommodate." *Id.* at 212. Caroline Stolz from Risk Management repeated substantially the same information to Tafolla later that day.

On January 15, Tafolla worked a full day. In the afternoon, one of the assistant district attorneys gave Tafolla documents to archive. By the end of the day, Tafolla believed that her accommodation request had been rejected and that she was not physically able to fulfill her full job responsibilities. When Tafolla left the office, she "felt in [her] mind that [she] probably was not going to go back after everything that [she] had been through." *Id.* at 220.

Division Chief Edward Heilig, in a memorandum dated January 16 (the "Heilig Memorandum"), responded to the Second Accommodation Request. He explained that Carroll had previously granted Tafolla's First Accommodation

8

Request "wherein [she] would not have to deal with any file weighing over five pounds" and that she was "hereby advised . . . not to 'lift, bend, twist or push any object over five pounds' and that if [she] believe[d] any file . . . weigh[ed] in excess of five pounds[, she] was not to touch that file." *Id.* at 985. He added "[t]hese accommodations allow you to perform 'secretarial work' . . . consistent with the conditions set by your doctor in his January 8, 2014 letter." *Id.* Finally, Heilig explained that "the [C]ounty does not have light duty assignments. If you are not capable of performing your job duties for any reason, including medical limitations, you will have to be out of work on medical leave until you can return to work with a Doctor's note indicating that you can work with no restrictions." *Id.* Tafolla interpreted this letter as denying her accommodation requests.

Tafolla ultimately took disability leave. In 2015, the County terminated her employment, pursuant to New York Civil Service Law § 73, due to her one-year absence from her employment with the County.

## II. Procedural History

On August 21, 2017, Tafolla filed a *pro se* complaint and, after retaining counsel, filed an amended complaint on January 22, 2018, alleging claims for

9

disability discrimination and retaliation under Section 1983, the ADA and NYSHRL.[3] After discovery, defendants moved for summary judgment.

On August 19, 2021, the district court granted defendants' motion on all claims. *Tafolla v. County of Suffolk*, No. 17-cv-4897, 2021 WL 3675042 (E.D.N.Y. Aug. 19, 2021). With respect to the disability discrimination claim under the ADA and NYSHRL, the district court concluded that Tafolla "fail[ed] to make a showing sufficient to establish [d]efendants did not offer her a reasonable accommodation, an element essential to her claim for liability." *Id.* at *6. In particular, after reviewing the record, the district court found that "[d]efendants granted [Tafolla] a plainly reasonable accommodation that was consistent with her doctors' notes," that is, a five-pound limitation on any lifting bending, twisting or pushing. *Id.* at *8. Moreover, to the extent Tafolla claimed that her medical documentation required relief from all archiving responsibilities, the district court found that Tafolla was responsible for the breakdown in the interactive process. *Id.* at *7–*8. As to the retaliation claim under the ADA and NYSHRL, the district court held that "the undisputed record does not support the argument that [Tafolla] was

---

[3] The ADA reasonable accommodation and retaliation claims were asserted against the County while the NYSHRL claims were asserted against all defendants. In the district court, Tafolla narrowed the Section 1983 claim to assert it only against the County for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

10

forced to take medical leave," and "because the proposed accommodation based on [Tafolla's] doctors' notes was plainly reasonable here . . . the accommodation does not constitute an adverse employment action." *Id.* at *9. Finally, with respect to the Section 1983 claim, the district court concluded that, even if the reasonable accommodation claim survived summary judgment, Tafolla failed to adduce evidence of an unlawful policy or practice that would support liability against the County under *Monell*. *Id.* at *10.

This appeal followed.

## DISCUSSION[4]

"We review a grant of summary judgment *de novo*." *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022). Summary judgment is appropriate "only upon a showing 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam) (quoting Fed. R. Civ. P. 56(a)). When deciding a motion for summary judgment, we must "'resolve all ambiguities and draw all permissible

---

[4] Because Tafolla has not presented any arguments on appeal regarding her Section 1983 claim, she has abandoned it, and we affirm the district court's grant of summary judgment on that claim. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995).

factual inferences in favor of the party against whom summary judgment is sought.'" *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## I. Reasonable Accommodation Claim

The ADA and the NYSHRL require an employer to provide a reasonable accommodation for an employee's disability unless the accommodation would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A); N.Y. Exec. L. 296(3)(a)–(b). We evaluate such claims under the ADA and NYSHRL using the familiar *McDonnell Douglas* burden-shifting framework. *See Bey v. City of New York*, 999 F.3d 157, 165 (2d Cir. 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Williams v. MTA Bus Co.*, 44 F.4th 115, 125 (2d Cir. 2022) (applying *McDonnell Douglas* to NYSHRL claims). Under *McDonnell Douglas*, "the plaintiff bears the initial burden of establishing a *prima facie* case." *Bey*, 999 F.3d at 165; *see also McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) ("In discrimination claims based both on adverse employment actions and on failures to accommodate, the plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [her] to perform the essential functions of [her] employment." (internal quotation marks and citations omitted)). If the plaintiff meets her initial burden, then the burden

shifts to the defendant. *Bey*, 999 F.3d at 165. However, because defendants here only contest Tafolla's claims on the grounds that she has failed to set forth a sufficient *prima facie* case, we have no need to examine whether Tafolla's proposed accommodation "would present undue hardships [for the defendants] and would therefore be unreasonable." *Id.* (internal quotation marks and citation omitted).

To make out a *prima facie* disability discrimination case based upon a failure to accommodate, a plaintiff must establish that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (internal quotation marks, alteration, and citation omitted); *see also Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the [NYSHRL] . . . is governed by the same legal standards as govern federal ADA claims.").

Defendants contest only the third and fourth elements of Tafolla's *prima facie* case for discrimination. As set forth below, evaluating the record in the light most favorable to Tafolla, we conclude that the district court erred in granting summary

judgment to defendants on the reasonable accommodation claim under the ADA and the NYSHRL.

### A. Essential Function

Defendants argue that summary judgment was warranted on the reasonable accommodation claims because archiving was an essential function of Tafolla's job. The district court did not reach this issue. Nevertheless, we have considered it and conclude that there are disputed facts in the record that preclude summary judgment on this element.

To determine a position's "essential functions" this Court "conduct[s] a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice," in which we "draw[] all inferences in favor of the non-moving party." *McMillan*, 711 F.3d at 126 (internal quotation marks omitted); *see also id.* (listing factors including "the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions"). "The term 'essential functions,' which is not defined in the statutes themselves, is generally defined in ADA regulations promulgated by the

14

Equal Employment Opportunity Commission ('EEOC') to mean the 'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.'" *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997) (quoting 29 C.F.R. § 1630.2(n)(1)). Under this standard, "a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position," with an understanding that "[a] reasonable accommodation can never involve the elimination of an essential function of a job." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) (alteration adopted) (internal quotation marks and citations omitted). Ultimately, however, "the question whether a task constitutes an essential function depends on the totality of the circumstances." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004).

Here, in deposition testimony, SIB Chief Carroll stated, "I don't know if I would deem [archiving] essential. It's rather minimal." Joint App'x at 591. Tafolla also asserts that the work was so unimportant that Carroll had to ask Tafolla in December 2013 to prepare a list of recently archived files because, as Carroll himself explained, he "wanted to have some understanding of how much work the archives entailed." *Id.* at 486. Another assistant district attorney described

15

archiving as "the last thing [for the administrative assistants] to get done because we have a lot of other pressing work to get done." *Id.* at 707. There were also no deadlines for archiving any particular file, and Division Chief Heilig acknowledged that backlog was not cause for concern. In addition, although Tafolla's job description does provide that a Clerk Typist "sorts, indexes and files documents," Tafolla notes that it does not mention the archiving process specifically and details predominantly sedentary tasks, including transcribing, typing, receiving and verifying documents, answering telephones, proofreading, operating simple office equipment, and acting as a receptionist. *Id.* at 990. Moreover, Carroll testified that the administrative assistants were permitted to divide up the various tasks among themselves. *See id.* at 434 (testifying that Tafolla and the other administrative assistant split up the various tasks among themselves); *id.* at 437 ("I don't know how [the administrative assistants] split it up. I just was concerned that the work was getting done.").

Construing this evidence most favorably to Tafolla, it is sufficient to raise a genuine issue of disputed fact as to whether archiving was an essential function of Tafolla's position. *See Stone*, 118 F.3d at 100 ("A function is, by definition, not 'essential' to a position if that function is 'marginal' . . . ."); *see also Miller v. Ill. Dep't*

16

*of Transp.*, 643 F.3d 190, 200 (7th Cir. 2011) (holding that summary judgment was unwarranted on the "essential function" issue where "it was a regular occurrence for individuals on [a particular] team to share and swap tasks according to their individual capacities, abilities, and limitations"). Accordingly, defendants' argument for summary judgment based on this element is unpersuasive.

### B. Accommodation Requests

As to the fourth *prima facie* element, defendants argue that the district court correctly determined that summary judgment was appropriate because they granted both the First and Second Accommodation Requests, and, in any event, Tafolla was responsible for any breakdown of the interactive process. We address these arguments in turn.

We have emphasized that questions related to "'[t]he reasonableness of an [] accommodation . . . often must be resolved by a factfinder.'" *Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins.*, 955 F.3d 305, 312 (2d Cir. 2020) (quoting *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015)). In many cases, the two sides dispute whether a particular accommodation is adequate to accommodate the plaintiff. *See, e.g., Noll*, 787 F.3d at 95 (affirming grant of summary judgment where employer provided sign language interpreters capable of translating files

17

rather than captioning or providing transcripts of all files stored on employer intranet). However, this case presents a different issue. Defendants' position is that the County *fully* granted Tafolla's two accommodation requests by not requiring her to archive files that were five pounds or more, and, thus, their response was plainly reasonable.

Consistent with defendants' position, the district court held that "[t]he undisputed record shows [d]efendants granted [Tafolla] the precise accommodation prescribed by her doctors." *Tafolla*, 2021 WL 3675042, at *6. The dissent adopts the same position. *See post*, at 3 ("Consistent with notes from Tafolla's doctors indicating that she should not lift any object over five pounds, Carroll agreed to limit Tafolla's archiving work to handling files of less than five pounds and to arrange for other employees to lift any heavier files or boxes for her."); *id.* at 6 ("Tafolla's doctor's note did not state that she was unable to do any work related to archiving closed case files; it simply advised that she was 'unable to lift, bend, twist, or push any object over five pounds.'" (quoting Joint App'x at 983)). We disagree and conclude, drawing all inferences in Tafolla's favor, that there are genuine disputed issues of material fact that preclude summary

18

judgment on the issue of whether defendants provided the accommodation that Tafolla requested based upon her doctors' instructions.

As Tafolla argues, the physician assistant's note could be reasonably viewed as stating two separate restrictions: (1) that she could not "lift" anything over five pounds, and (2) that she could not perform any "bending" or "pushing" movements. Joint App'x at 980. In particular, the fact that the note lists the restrictions on two separate lines, each with its own bullet point, could support that interpretation.

Although Carroll did accept the five-pound lifting restriction, he did not consider the bending or pushing restriction when he told Tafolla to archive files weighing less than five pounds. Carroll's deposition testimony confirms that he did not view the five-pound restriction as distinct from the bending restriction. *See id.* at 425 (explaining that the note "indicates lifting, bending and twisting, however, *it revolved all around the weight of the object being five pounds or more*" (emphasis added)); *see also id.* at 430 (stating that the note provided that "five pounds is the limitation"). Thus, based on the language of the note from her doctor's office, a rational jury could find that the defendants did not fully grant Tafolla's First Accommodation Request.

19

We also conclude that a rational jury could find that the defendants did not fully grant Tafolla's Second Accommodation Request. Dr. Galler's letter, which formed the basis of the Second Accommodation Request, can again be reasonably read to provide that Tafolla should not be required to archive any files regardless of weight. Dr. Galler's letter instructed that Tafolla was unable to "lift, bend, twist, or push any object over five pounds." *Id.* at 983. To the extent that formulation was somewhat less clear than the prior medical note because the bending and twisting restrictions were not articulated on separate lines, Dr. Galler crucially added that Tafolla was "able to perform secretarial work *but no physical duties*," which could be reasonably interpreted to mean that he intended to fully limit Tafolla from archiving because it would involve bending or twisting regardless of the weight of the file. *Id.* (emphasis added). Heilig, however, appears to have read Dr. Galler's letter to restrict Tafolla's activities only with respect to objects weighing more than five pounds. By stating, in the Heilig Memorandum, that Tafolla was "not to 'lift, bend, twist or push any object over five pounds' and if [she] believe[d] any file . . . weighs in excess of five pounds[, she was] not to touch that file," Heilig (like Carroll) was indicating that Tafolla *was responsible* for archiving files less than five pounds. *Id.* at 985. In deposition testimony, Heilig

20

also confirmed that he understood Dr. Galler's letter to restrict physical duties "[o]ver and above the five pounds." *Id.* at 906; *see also id.* at 904–05 (noting disagreement with contention that Dr. Galler's note restricted any bending or twisting). Tafolla also contends that the Heilig Memorandum could not be reasonably interpreted as granting her full accommodation requests because it further noted that the County did not provide "light duty assignments" and that employees must work "with no restrictions."[5] *Id.* at 985.

In short, given the language of the two medical documents Tafolla submitted to the County, a jury could reasonably conclude that the instructions from her doctor did not permit Tafolla to perform any archiving that involved bending or twisting (even if the file was under five pounds) and that defendants refused to grant a reasonable accommodation consistent with this instruction.[6]

---

[5] At his deposition, Heilig was asked about the EEOC's reference to this language in its determination that there was "reasonable cause" to believe that the County discriminated against Tafolla on the basis of her disability. Joint App'x at 959–60. Heilig responded that he believed the EEOC's determination was "in error" but provided no explanation as to how that language should have been interpreted by Tafolla. *Id.* at 960.

[6] We also note that, to the extent that Carroll suggested in passing on January 7 that Tafolla could be transferred to another unidentified position, there is no evidence that defendants ever formally proposed (or even discussed further) the possibility of a transfer with Tafolla, and the Heilig Memorandum did not mention the transfer as an option. Thus, defendants never argued in the district court (nor do they argue on appeal) that summary judgment was warranted because Carroll's reference to a transfer constituted a reasonable accommodation that Tafolla rejected. In any event, whether any

21

Finally, we also disagree with the district court's determination that the uncontroverted evidence established that Tafolla unilaterally "abandoned" the interactive process and that "if [Tafolla] did not understand the terms of the accommodation, then she had an obligation to seek clarification." *Tafolla*, 2021 WL 3675042, at *8 (citing *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 946 (2d Cir. 2008) (summary order)). We have explained that "the ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *McBride*, 583 F.3d at 99 (alteration adopted) (citations omitted)). Thus, once the interactive process has been initiated by the employee's request for an accommodation, the regulations contemplate that the employer will "us[e] a problem solving approach." 29 C.F.R. Pt. 1630, App. § 1630.9. To be sure, an employee seeking an accommodation is required to participate in this interactive process in order to help the employer identify the "precise limitations resulting from the disability

---

purported transfer could constitute a reasonable accommodation, where Tafolla was not interested in a reassignment, could not be decided at the summary judgment stage in this case. *See, e.g.*, *Wirtes v. City of Newport News*, 996 F.3d 234, 241 (4th Cir. 2021) ("Every circuit court to have addressed this issue has concluded that an employer fails to accommodate its qualified disabled employee when it transfers that employee from a position they could perform if provided with reasonable accommodations to a position they do not want." (collecting cases)).

and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). Thus, we have recognized that, where a "breakdown in interactive process [was] manifestly [the employee's] fault," a failure-to-accommodate claim "might be deemed frivolous." *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 114 (2d Cir. 2001).

Here, again construing the evidence most favorably for Tafolla, we conclude the district court erred in resolving this fact-intensive question on summary judgment. As noted above, Tafolla submitted the First Accommodation Request on December 6, 2013, which she supplemented with the physician assistant's note on December 10. She did not receive a direct response until Carroll raised the archiving with her on January 7, 2014. When Carroll expressed his understanding that Tafolla was only restricted from handling files heavier than five pounds, Tafolla responded that the note established that she was not physically able to do the archiving. Carroll's response that she should "get a box, put it on the floor and sit in [her] seat and get it done" could be reasonably construed by Tafolla as ending the interactive process, which was further reinforced when Tafolla found new files on her desk the next day. Joint App'x at 191.

23

Even assuming *arguendo* that Carroll's statements and conduct could not be found by a rational jury to constitute the defendants' termination of the interactive process, the uncontroverted evidence is that Tafolla continued to engage with the County by filing her Second Accommodation Request on January 14. Although defendants purported to grant the Second Accommodation Request, as noted *supra*, a reasonable jury could find otherwise. Human Resources' immediate verbal response to Tafolla that the County does not offer light duty assignments, the same language repeated in the Heilig Memorandum, and an assistant district attorney giving Tafolla new files to archive on January 15 could be reasonably construed both as a rejection of the Second Accommodation Request and the defendants' termination of the interactive process.

Moreover, at no time did the defendants suggest to Tafolla that she needed to submit additional medical documentation to support her accommodation requests, nor did the defendants seek clarification from Tafolla or her doctor[7] regarding the nature of the accommodation she requested. *See McBride*, 583 F.3d at 101 ("It is certainly true that an employer, by failing to engage in a sufficient interactive process, risks not discovering a means by which an employee's

---

[7] Dr. Galler's letter explicitly stated: "If there are any additional questions concerning [Tafolla] please contact my office." Joint App'x at 983.

24

disability could have been accommodated and thereby increases the chance that it will be found to have violated the ADA."); *see also Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 193 (3d Cir. 2009) ("Engaging in a good-faith interactive process may not only lead to identifying a specific accommodation that will allow a disabled employee to continue to function as a dignified and valued employee, it may also help sensitize the employer to the needs and worth of the disabled person, and disabuse the employer of any misperceptions it may have of the employee's condition and qualification for employment." (internal quotation marks and citation omitted)); *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996) (relying in part on the observation that "[i]f the [plaintiff's doctor's] note was too ambiguous and [the employer] did not know what [the plaintiff] wanted, [the employer] easily could have called [the doctor] for a clarification" in determining that the plaintiff presented genuine issues of material fact showing that the employer was responsible for the breakdown of the interactive process); *Miller v. Kendall*, No. 14-cv-393, 2016 WL 4472748, at *2 (W.D.N.Y. Aug. 25, 2016) (concluding ambiguous doctor's note precluded summary judgment for defendant).

Defendants argue that a rational jury could not find that they terminated the interactive process with the Heilig Memorandum on January 16 because Tafolla testified at her deposition that, after leaving work on January 15, she already intended to go on medical leave rather than return to work. Thus, defendants contend (as the district court found) that her deposition testimony establishes that she was incontrovertibly at fault for terminating the interactive process even before receiving the Heilig Memorandum. The dissent agrees with that assessment. *See post*, at 3–4 (noting that, a day after submitting her written request for an accommodation, "Tafolla left with 'no intention of going back to work'" and "[a]s a matter of law, Tafolla's responsibility for the breakdown of the interactive process is fatal to her failure-to-accommodate claims under both the ADA and NYSHRL" (internal citation omitted)).

As an initial matter, it is difficult to discern how Tafolla's *uncommunicated* intent to go on medical leave starting on January 16 could have been construed by the defendants as her termination of the interactive process, in advance of the Heilig Memorandum. Indeed, contrary to that undisclosed intent, Tafolla continued to convey to Carroll that she would return to work. On January 16 and 17, Tafolla texted Carroll indicating that she would be out of work those days

26

because she was in pain.  On January 21, she told Carroll that she would be out of work "the remainder of the week."  Joint App'x at 217.  Then on January 27, she informed Carroll that she was going to be out "a while longer."  *Id.*

In any event, any contention that her failure to return to work after January 15 constituted an abandonment of the interactive process must take into account what had transpired prior to Tafolla reaching any such decision.  *See, e.g., E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 806 (7th Cir. 2005) ("The last act in the interactive process is not always the cause of a breakdown . . . and courts must examine the process as a whole to determine whether the evidence requires a finding that one party's bad faith caused the breakdown.").  In particular, Tafolla testified that after she faxed the Second Accommodation Request to Human Resources on January 14, she received a telephone call from Diane Stankewicz of Human Resources during which Tafolla told her what had transpired with Carroll on January 7, including that Carroll had not granted the accommodation request.  According to Tafolla, Stankewicz told her that, "if [Carroll] wasn't going to allow [Tafolla] to stay there [in SIB], then [Tafolla] would have to go out on medical leave, on disability."  Joint App'x at 212–13.  Tafolla then called Caroline Stolz in Risk Management (who handled long-term disability) and Stolz agreed with

27

Stankewicz that "if [Carroll] didn't want to give [Tafolla] the accommodation, then [Tafolla] would have to go out on disability." *Id.* at 213. Thus, Tafolla explained that, when she left work on January 15, she had the following understanding:

> [Carroll] had no intention of honoring my reasonable accommodation, and he had no intention of having [the other administrative assistant] file the archives, and there was no way I was going to be able to physically do them, and after speaking to Caroline [Stolz] and speaking to Diana Stankewicz and realizing that I had no other option, [Carroll] left me with no choice, I knew that I was going to have to go out on disability.

*Id.* at 218; *see also id.* at 220 ("When I left the office [on January 15], I felt in my mind that I probably was not going back after everything I had been through, and the fact that [Carroll] knew my situation, and he wasn't willing to accommodate me, yes, I pretty much know I wasn't going back after I spoke to Caroline [Stolz] . . . .").

Again construing the evidence most favorably to Tafolla, a rational jury could find that these oral statements by various County representatives ended the interactive process, and that the January 16 Heilig Memorandum merely confirmed in writing what Tafolla already had been told orally before she left work on January 15. *See, e.g.*, *Sears, Roebuck & Co.*, 417 F.3d at 808 ("It is not an employee's responsibility . . . to repeatedly prod a reticent employer. [Plaintiff]

28

was given no indication that [the employer] . . . was willing to work with her to determine a way to reasonably accommodate her disability. In this context, [the employer] cannot avoid liability by contending that [plaintiff] should have tried harder to force it out of its reluctant posture.").

We recognize that there are competing inferences that could be drawn from the evidence and that a rational jury could indeed find that Tafolla was at fault for the breakdown of the interactive process. However, these competing inferences (along with any credibility assessments necessary to draw such inferences) cannot be resolved by a court on summary judgment. *See H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir. 1989) (explaining that, although "*reasonable* inferences can be drawn from the evidence in favor of the nonmoving party, . . . the question of what weight should be assigned to competing permissible inferences remains within the province of a factfinder at trial" (internal quotation marks and citation omitted)); *see also Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1109 (6th Cir. 2008) (reversing summary judgment after concluding that "[t]he plaintiff has presented sufficient evidence from which a jury could find that her failure to return to work and eventual discharge was a foreseeable and intended result of the company's action in refusing to allow her to use a stool [in

29

performing her work as a cashier] and refusing to hold a meeting to resolve the issue."); *Sears, Roebuck & Co.*, 417 F.3d at 808 (holding district court erred in granting summary judgment to employer in finding plaintiff caused the breakdown in the interactive process); *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1253 (10th Cir. 2004) (reversing summary judgment because of disputed facts regarding "case specific determination" as to who was responsible for breakdown in interactive process).

\* \* \*

In sum, a rational jury could find that: (1) archiving was not an essential function of Tafolla's position; and (2) defendants did not grant her the reasonable requested accommodation that was supported by her medical documentation and that they unilaterally ended the interactive process with the Heilig Memorandum. Accordingly, summary judgment was unwarranted on the reasonable accommodation claim under the ADA and NYSHRL.

## II. Retaliation Claim

The burden-shifting framework under *McDonnell Douglas* also applies to retaliation claims under both the ADA and the NYSHRL. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). The elements of a *prima facie* case of

30

retaliation under both statutes are: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (analyzing an ADA retaliation claim) (quoting *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002)); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (applying same elements to a retaliation claim under NYSHRL).

With respect to causation, a plaintiff must prove "that 'but for' the disability, the adverse action would not have been taken." *Natofsky*, 921 F.3d at 347. Proof of causation can be established either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). "A plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment

31

action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (alteration adopted) (internal quotation marks omitted).

The district court determined that "the undisputed record does not support the argument that [Tafolla] was forced to take medical leave," and thus, defendants were entitled to summary judgment on the retaliation claim. *Tafolla*, 2021 WL 3675042, at *9. We disagree.

The alleged retaliatory conduct was in close temporal proximity to the requests for an accommodation. Specifically, on January 7, 2014, Tafolla told Carroll that she could not perform archiving based on her doctor's instruction. She testified that, in response, Carroll flung a file on her desk, and told her that he was "going to have [her] put out on disability." Joint App'x at 191. She described him as "hostile" and recalled that "he was yelling." *Id.* at 188. On January 16, 2014, after Tafolla had faxed the Second Accommodation Request to Human Resources, she received the Heilig Memorandum indicating, among other things, that the "[C]ounty does not have light duty assignments" and that, if Tafolla was "not capable of performing [her] job duties for any reason, including medical limitations, [she] will have to be out of work on a medical leave until [she] can

32

return to work with a Doctor's note indicating that [she] can work with no restrictions." *Id.* at 985.

The close temporal proximity between Tafolla's requests for the accommodation and the instruction that she would need to go on medical leave is sufficient to support an inference of retaliation. *See Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 555 (2d Cir. 2001) (holding that a period of four months between the protected activity and the adverse action was "sufficient to support an allegation of a causal connection strong enough to survive a summary judgment motion"). In addition to the temporal proximity, Tafolla relies on Carroll's oral statements and the Heilig Memorandum to support her argument that defendants retaliated against her by forcing her to go on medical leave, ultimately leading to her termination. Moreover, although the Heilig Memorandum stated that the "County does not have light duty assignments," the Director of Labor Relations for the County testified that "saying there is no such thing as light duty . . . is incorrect." Joint App'x at 1064. We conclude that this evidence is sufficient to create disputed issues of material fact, including on causation, that preclude summary judgment on the retaliation claim under the ADA and NYSHRL.

33

In reaching this conclusion, we have considered defendants' arguments but find them unpersuasive. First, defendants contend that, "[s]ince [Tafolla] was twice offered a reasonable accommodation, she was not disadvantaged in a materially significant way." Appellees' Br. at 30. The dissent's analysis hinges on this same contention. *See post*, at 6 (determining that the accommodation offered by the defendants "was entirely consistent with [the] medical advice" of her doctor). However, in light of our determination that material factual disputes exist with respect to the reasonableness of defendants' response to Tafolla's accommodation requests, that argument similarly provides no basis for summary judgment on the retaliation claim. We also find unavailing defendants' assertion that Tafolla's retaliation claim fails for lack of causation because her employment was terminated, pursuant to New York Civil Service Law § 73, about one year after the events surrounding her disability requests. As the district court recognized, a forced medical leave "could well dissuade a reasonable worker from making or supporting a charge of discrimination" and could constitute an adverse action for purposes of a retaliation claim. *Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 704 (7th Cir. 2012) (holding, in

34

the context of a retaliation claim, that "[b]eing forced to take an unpaid leave of absence" is an adverse employment action)). Moreover, the subsequent termination need not be evaluated in isolation where Tafolla asserts that it was the culmination of defendants forcing her to be placed on medical leave shortly after her accommodation requests. In other words, according to Tafolla, defendants promptly retaliated against her with a forced medical leave but, due to civil service laws, had to wait one year for that leave to result in termination. *See, e.g.*, *Grant v. Bethlehem Steel*, 622 F.2d 43, 45–46 (2d Cir. 1980) (holding that plaintiff established causal connection despite an eight-month lapse in time when the defendant was unable to retaliate any sooner under the circumstances); *see also Miller v. Erie Cnty. Off. of Child. & Youth*, 2018 WL 3368723, at *7 (W.D. Pa. July 10, 2018) ("Plaintiff correctly notes that, while it is technically true he remained 'employed' until April 2017, he was actually retained on an unpaid medical leave of absence for the majority of this time period, and was not permitted to return to his job because of his inability to drive. This, in itself, may be regarded as an adverse action that began well before Plaintiff was actually terminated. Thus, reasonable minds could differ as to whether placing Plaintiff on unpaid medical leave was a materially adverse action having a sufficient causal connection to Plaintiff's request for a

35

reasonable accommodation so as to satisfy the third prong of Plaintiff's *prima facie* case of retaliation." (internal citations omitted)).

In short, construing the evidence most favorably to Tafolla, a rational jury could find that defendants retaliated against her for making the accommodation requests by forcing her to go on a medical leave which ultimately led to her termination. Accordingly, the district court erred in granting summary judgment on the retaliation claims under the ADA and NYSHRL.

\* \* \*

For the foregoing reasons, we **AFFIRM** the district court's judgment as to Tafolla's Section 1983 claim and **VACATE** the judgment with respect to the reasonable accommodation and retaliation claims. The case is **REMANDED** to the district court for further proceedings consistent with this opinion.

RICHARD J. SULLIVAN, *Circuit Judge*, dissenting in part:

I join the majority in affirming the district court's grant of summary judgment as to Tafolla's claim under 42 U.S.C. § 1983, which was clearly abandoned. But I cannot agree with the majority's decision to vacate the district court's grant of summary judgment as to Tafolla's failure-to-accommodate and retaliation claims asserted pursuant to the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 296 *et seq.* To my mind, the undisputed evidence in the record establishes that Tafolla was responsible, as a matter of law, for the breakdown of the interactive process. For that reason, I would affirm the district court's judgment in its entirety.

I begin with Tafolla's failure-to-accommodate claims. Under the ADA, an employer must "mak[e] reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless . . . the accommodation would impose an undue hardship on the operation of the business of such [employer]." 42 U.S.C. § 12112(b)(5)(A). As the majority recognizes, "the ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's

disability can be reasonably accommodated."  Maj. Op. at 22 (quoting *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 99 (2d Cir. 2009)).

While the regulations implementing the ADA contemplate that "it may be necessary for the [employer] to *initiate*" this "interactive process," 29 C.F.R. § 1630.2(o)(3) (emphasis added), they also clearly "envision an interactive process that requires participation by both parties," *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996); *see* 29 C.F.R. pt. 1630 app. ("The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves *both* the employer *and the [employee]* . . . ." (emphasis added)). As a result, we have explained that where a "breakdown in the interactive process [was] manifestly [the employee's] fault," any failure-to-accommodate claim would be "frivolous."  *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 114 (2d Cir. 2001); *see also, e.g.*, *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 946 (2d Cir. 2008); *Noel v. BNY-Mellon Corp.*, 514 F. App'x 9, 10 (2d Cir. 2013); *see also Romanello v. Intesa Sanpaolo S.p.A.*, 949 N.Y.S.2d 345, 348–49 (1st Dep't 2012) (holding same under NYSHRL), *aff'd as modified,* 22 N.Y.3d 881 (2013).

Applying this framework to the undisputed facts in the record, a reasonable factfinder would have no choice but to conclude that defendants engaged with

2

Tafolla in such an "interactive process" and that Tafolla was responsible for its "breakdown." *Parker*, 260 F.3d at 114. Following the November 2013 automobile accident in which she sustained injuries to her neck, back, and ribs, Tafolla sent Carroll an email asking to be relieved of her archiving duties, which entailed lifting closed case files out of a box, logging their contents into a computer system, and then placing the files into another box. Within two hours of receiving that email, Carroll responded:

> I don't want you to hurt yourself[;] why don't we see what your doctor says Monday. If your doctor deems that you are unable to perform any work[-]related functions[,] please have him/her provide you with a letter indicating the nature of those restrictions.

J. App'x at 71. Consistent with notes from Tafolla's doctors indicating that she should not lift any object over five pounds, Carroll agreed to limit Tafolla's archiving work to handling files of less than five pounds and to arrange for other employees to lift any heavier files or boxes for her. Carroll declined, however, to relieve Tafolla of her archiving responsibilities altogether. Unsatisfied with Carroll's proposed accommodation, Tafolla submitted a written request for additional accommodations to the human resources department. Just a day after submitting that request – and a day *prior* to receiving Heilig's formal response to it – Tafolla left with "no intention of going back to work." *Id.* at 1198 ¶ 111.

3

In light of this record, I agree with the district court that "no reasonable jury could find that [d]efendants, rather than [Tafolla] herself, terminated the interactive process for discussing accommodations." Sp. App'x at 22. As a matter of law, Tafolla's responsibility for the breakdown of the interactive process is fatal to her failure-to-accommodate claims under both the ADA and NYSHRL. *See Parker*, 260 F.3d at 114; *Romanello*, 949 N.Y.S.2d at 348–49. I would therefore affirm the district court's grant of summary judgment on those claims.

Contrary to the majority's contentions, no reasonable jury could conclude that defendants terminated the interactive process on either January 7 or January 15, 2014. The undisputed facts show that Tafolla made a second accommodation request approximately one week after her interaction with Carroll on January 7, thereby undermining any claim that Tafolla reasonably believed the process was at its end as of that date. I also fail to see how statements made by the County's human resources representatives on January 15 could reasonably be understood to have terminated the interactive process. On their face, these statements made clear that any decision as to Tafolla's accommodation requests would be left to Carroll – not the County representatives. And – although Tafolla discussed her *first* accommodation request with Carroll on January 7 – she repeatedly confirmed

4

during her deposition that she never discussed her *second* accommodation request with him directly. As such, Tafolla's mere intuition that – as of the time she left the building on January 15 – Carroll was "[un]willing to accommodate [her]" and there was "nothing [she] could really do," J. App'x at 220, is insufficient to create a jury-question on this issue.

I also disagree with the majority that the evidence in the record is sufficient to preclude dismissal of Tafolla's ADA and NYSHRL retaliation claims. In vacating the district court's grant of summary judgment, the majority concludes that there is sufficient evidence in the record "to support [Tafolla's] argument that defendants retaliated against her by forcing her to go on medical leave." Maj. Op. at 33. In so concluding, the majority lends credence to Tafolla's claim that defendants "forced" her to take a leave of absence, *id.* at 35, by giving her an "all-or-nothing option" – namely, to either "work without restrictions or take medical leave," Tafolla Br. at 30–31.

But this reasoning "confuses the allegedly discriminatory action of failing to accommodate [Tafolla's] disability with retaliation for seeking an accommodation." *Wenc v. New London Bd. of Educ.*, No. 14-cv-840 (VAB), 2016 WL 4410061, at *17 (D. Conn. Aug. 16, 2016), *aff'd,* 702 F. App'x 27 (2d Cir. 2017). It

5

also misconstrues the record before us. Indeed, Tafolla's doctor's note did not state that she was unable to do any work related to archiving closed case files; it simply advised that she was "unable to lift, bend, twist, or push any object over five pounds." J. App'x at 983. And the accommodation offered to her by defendants, far from being an "all-or-nothing option," *contra* Tafolla Br. at 30, was entirely consistent with that medical advice:

> You are hereby advised that you are not to "lift, bend, twist[,] or push any object over five pounds[,]" and if you believe [that] any file you ha[ve] to "lift, bend, twist[,] or push" in connection with your job function weighs in excess of five pounds[,] you are not to touch that file[;] and after advising Mr. Carroll of same[,] other arrangements for dealing with that file will be made.

J. App'x at 81. Clearly, this offer to "allow [Tafolla] to perform secretarial work as a clerk typist consistent with the conditions set by [her] doctor," *id.* (internal quotation marks omitted), was not an "adverse [employment] action" within the meaning of the ADA or NYSHRL, *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (stating that a prima facie claim of retaliation under the ADA requires that "an adverse decision or course of action was taken against plaintiff"); *see also Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (noting that the NYSHRL contains "anti-retaliation provisions substantially similar to the ADA's provision"). I therefore see no basis for concluding that the district court

6

erred in dismissing Tafolla's ADA and NYSHRL retaliation claims.

For these reasons, I respectfully dissent from the majority's opinion and would affirm the district court's grant of summary judgment as to all claims.