******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARITA TAMMY CASTELINO *v.* WHITMAN,
BREED, ABBOTT & MORGAN, LLC
(AC 47014)

Seeley, Westbrook and Palmer, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment for the defendant, rendered following its grant of the defendant's motion for summary judgment on the plaintiff's complaint alleging, inter alia, employment discrimination based on disability. The plaintiff claimed that the court improperly concluded that a genuine issue of material fact did not exist with respect to her claims. *Held*:

The trial court properly rendered summary judgment for the defendant, as the evidence, even when viewed in the light most favorable to the plaintiff, was insufficient to create a genuine issue of material fact as to whether the plaintiff's position, at the time of her hiring, required some measure of in person work in the office, and the same evidence also established, as a matter of law, that the plaintiff's proposed accommodation to work entirely from home was not reasonable because that accommodation would eliminate an essential job function.

Argued November 12, 2024—officially released July 1, 2025

*Procedural History*

Action to recover damages for, inter alia, alleged employment discrimination, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Kenneth B. Povodator*, judge trial referee, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*James V. Sabatini*, for the appellant (plaintiff).

*James C. Riley*, with whom, on the brief, was *John M. Hendele IV*, for the appellee (defendant).

*Opinion*

PALMER, J. The plaintiff, Marita Tammy Castelino, appeals from the summary judgment rendered by the

trial court in favor of the defendant, Whitman, Breed, Abbott & Morgan, LLC, with respect to her claims under the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-51 et seq., for disability discrimination, failure to accommodate, and retaliation. On appeal, the plaintiff contends that the court improperly granted the defendant's motion for summary judgment because, contrary to the court's determination, there are genuine issues of material fact with respect to each of the plaintiff's claims and, consequently, the plaintiff is entitled to a jury trial on her claims. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, viewed in the light most favorable to the plaintiff as the nonmoving party, and procedural history are relevant to our analysis. Commencing on May 29, 2020, the plaintiff was employed by the defendant, a law firm, to serve as an administrative assistant in the defendant's real estate practice group. The plaintiff was hired to work for Attorney Cynthia Smith, who headed the defendant's real estate practice group, and, more specifically, to provide support to Cynthia Smith's longtime paralegal, Carla Smith.[1] Among other matters, Cynthia represents landlords and tenants in commercial leases, sellers and purchasers in sale and purchase transactions, and developers in various transactions.

The plaintiff was told that her position was "mostly" remote and that she would be expected to go into the office "once in a while," on an "as needed" basis. At the start of the COVID-19 pandemic in March, 2020, certain of the defendant's practice groups had converted to a mostly remote work model. The real estate

---

[1] For ease of reference, we hereinafter refer to Cynthia Smith and Carla Smith by their first names throughout this opinion. Although they share the same last name, the record does not indicate that Cynthia and Carla are related.

practice group, however, continued to work from the office on a regular basis, subject to social distancing restrictions and required mask wearing. The exception was Carla, who was directed by her physician not to come into the office because she suffers from a chronic health condition that severely compromises her immune system.

During the plaintiff's first two weeks with the defendant, Cynthia was traveling and out of the office, and the plaintiff remained in the office organizing physical files. The plaintiff learned that COVID-19 testing was being performed at a medical facility in the same office building where the defendant's office was located, and she observed that nurses from that medical facility used the same restrooms as the defendant's employees. As a result, the plaintiff, who previously had been diagnosed with diabetes and asthma, was concerned about being exposed to COVID-19.

The plaintiff relayed her concerns to Cynthia during a phone conversation on June 11, 2020, and requested to work exclusively remotely. Cynthia denied the plaintiff's request. The plaintiff memorialized this conversation in an email to herself and her husband. Although the defendant did not permit the plaintiff to work remotely on an exclusive or continuous basis, Cynthia granted the plaintiff's requests to do so on specific days.

According to the plaintiff, when she worked in the office, she spent approximately one third to one half of her time performing personal errands for Cynthia, such as accessing documents from files concerning Cynthia's personal properties, picking up lunch for Cynthia, and making "personal deposits" on Cynthia's behalf at a bank. With respect to the other work that required the plaintiff's presence in the office, she was expected to maintain physical files, scan client documents, and meet with clients to obtain "ink signatures" and notarize documents for real estate closings.

Throughout the month of June, Cynthia and Carla expressed their concerns to each other about the plaintiff's work performance. On June 8, only one week after the plaintiff began work at the defendant, Carla sent an email to Cynthia expressing frustration with the plaintiff, stating, among other things: "I don't think she is going to work out unless she can grasp a lot of things quicker than she's shown [in] the past week. She does not pay attention to what's contained in e-mails." On June 11, the plaintiff emailed Cynthia and Carla concerning signatures the plaintiff had missed in a real estate contract. On June 15, Carla emailed the plaintiff regarding incorrect information that the plaintiff had entered on a wire transfer request form.

On June 16, Cynthia emailed Anthony Riccio, an employment recruiter who had worked with the defendant to fill the position for which the plaintiff was hired, and told him that there were some "growing pains" with the plaintiff, explaining that "[t]here are a few issues as she seems to get quite flustered and consequently does not pay attention to details, but we will give her a few more days to settle in. I would expect, however, with someone of her experience that she will grasp things quickly." Cynthia also inquired of Riccio about the length of the plaintiff's probationary period.

In the beginning of July, Cynthia and Carla continued to email the plaintiff about certain performance issues, including the fact that she had provided a client with the wrong financial statement during a real estate closing. On July 9, Cynthia decided that the plaintiff's employment would be terminated. Carla emailed Riccio, stating that, after careful consideration, it had become "increasingly evident that [the plaintiff] is not going to succeed in [her] role" because she did not demonstrate the real estate experience reflected on her resume or discussed during the interview process, and she lacked the necessary attention to detail. Carla asked

Riccio to begin the process of finding a replacement for the plaintiff. Cynthia, who was copied on the email chain, thanked Riccio for his assistance and stated: "It is very disappointing, and I am very sorry to say that [the plaintiff] is just not a good fit for this particular role."

The plaintiff continued working for the defendant, unaware of her impending termination. On July 23, Carla emailed the plaintiff and inquired whether she had contacted clients to obtain information for certain sale documents, a task that Carla had asked the plaintiff to do a few days earlier. When the plaintiff responded that she had not done so, Cynthia, who again was copied on the email chain, emailed Attorney Kevin Walsh, one of the defendant's managing partners, and asked: "When are we terminating her? I cannot trust her to follow-up or perform even rudimentary tasks." The plaintiff's employment was terminated on July 27, not quite two months after she commenced work with the defendant.

The plaintiff thereafter filed a timely complaint with the Commission on Human Rights and Opportunities (CHRO), which issued a release of jurisdiction on June 30, 2021. Subsequently, on September 23, 2021, the plaintiff commenced the present action against the defendant. In count one of her complaint, the plaintiff alleged that the defendant had violated General Statutes § 46a-60 (b) (1)[2] by discriminating against her and terminating her because of her physical disabilities, namely,

---

[2] General Statutes § 46a-60 (b) (1) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . [f]or an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability, physical disability, including, but not limited to, blindness, status as a veteran or status as a victim of domestic violence . . . ."

diabetes and asthma. In count two, the plaintiff alleged that the defendant had violated § 46a-60 (b) (1) by failing to provide her with a reasonable accommodation for her disabilities. In count three, the plaintiff alleged that the defendant had violated § 46a-60 (b) (4)[3] by terminating her employment in retaliation for requesting a reasonable accommodation.

On March 15, 2023, the defendant filed a motion for summary judgment accompanied by a memorandum of law maintaining that (1) the plaintiff could not establish a prima facie case with respect to any of her claims, (2) her employment was terminated for a legitimate, nondiscriminatory reason, namely, her performance deficiencies, and (3) she could not demonstrate that the defendant's proffered reason for her termination was pretextual. The defendant submitted several exhibits in support of its motion, including affidavits from Cynthia, Carla, and Walsh.

On April 26, 2023, the plaintiff filed a revised complaint containing the same three claims as the original complaint. The plaintiff, however, made more specific factual allegations in connection with her failure to accommodate claim, alleging that "the defendant failed to accommodate the plaintiff's disability by failing to permit remote work from home, failing to provide digital copies of documents, and failing to provide a large computer screen . . . ."

On May 30, 2023, the plaintiff filed an objection to the defendant's motion for summary judgment, contending, in her memorandum of law in opposition to

---

[3] General Statutes § 46a-60 (b) (4) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . [f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ."

the defendant's motion, that judgment as a matter of law was inappropriate because there were disputed issues of fact material to her claims. In support of her contention, the plaintiff provided the court with several exhibits, including her deposition testimony and affidavit; the email memorializing her June 11, 2020 phone conversation with Cynthia; the defendant's answer to the plaintiff's CHRO complaint; a copy of an email between Cynthia and Riccio in May, 2020, concerning the plaintiff's start date and whether she was comfortable coming into the office; and the defendant's answers and objections to the plaintiff's interrogatories and requests for production. The defendant filed a reply memorandum on June 9, 2023.

The court, *Hon. Kenneth B. Povodator*, judge trial referee, held a hearing on the defendant's motion for summary judgment on June 12, 2023. On October 10, 2023, the court issued a memorandum of decision concluding that there were no genuine issues of material fact with respect to the plaintiff's claims and that the defendant was entitled to judgment as a matter of law.[4] With respect to the disability discrimination claim set forth in count one of the plaintiff's complaint, the court first determined that the plaintiff had not provided evidence to establish each of the elements of her prima facie case. As an initial matter, the court expressed doubt as to whether the plaintiff had satisfied her burden of demonstrating that her chronic conditions of

---

[4] In resolving the defendant's summary judgment motion, the trial court engaged in the well settled analytical framework applicable to employment discrimination claims, pursuant to which, as we explain more fully hereinafter, "the plaintiff first must establish a prima facie case, then the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for its employment decision. . . . Once the defendant offers a legitimate, nondiscriminatory reason, then the plaintiff has the burden to prove by a preponderance of the evidence that the proffered reason is pretextual." (Citation omitted; footnote omitted.) *Lassen* v. *Hartford*, 223 Conn. App. 285, 290–91, 308 A.3d 564 (2024).

asthma and diabetes qualified her as disabled for purposes of CFEPA,[5] particularly in view of the fact that those conditions did not have any appreciable impact on her job performance. The court also concluded that the plaintiff could not establish that she was qualified for her position because she could not perform the essential functions of her job with the accommodation that she had requested. Specifically, the court determined that working entirely remotely was not a reasonable accommodation request, as a matter of law, because that accommodation would have eliminated an essential function of her job, namely, the work that she was required to do in the office. Finally, the court further determined that the plaintiff was unable to establish a prima facie case under CFEPA because she had failed to establish that the adverse employment action, that is, her termination, had occurred under circumstances that gave rise to an inference of discrimination.[6]

The court also concluded that, even if the plaintiff could establish a prima facie case for her disability discrimination claim, the evidence offered by the defendant satisfied its burden of providing a legitimate, nondiscriminatory justification for the plaintiff's termination, specifically, her performance deficiencies. With respect to whether the plaintiff could demonstrate that the reason proffered by the defendant was merely a

---

[5] Pursuant to General Statutes § 46a-51 (15), " '[p]hysically disabled' refers to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or being hard of hearing or reliance on a wheelchair or other remedial appliance or device . . . ."

[6] "To establish a prima facie case of discrimination, an employee plaintiff must show that (1) [she] is a member of a protected class; (2) [she] was qualified for the position; (3) [she] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination." (Internal quotation marks omitted.) *Lassen* v. *Hartford*, 223 Conn. App. 285, 290 n.5, 308 A.3d 564 (2024).

pretext for discrimination, the court stated: "[I]t remains a challenge to treat the plaintiff's claims as anything other than an attempt to take the combination of the defendant's dissatisfaction with her performance and her own efforts to change her job requirements and recharacterize them as improper conduct by the defendant."

The court next concluded that the plaintiff's claim that the defendant failed to provide her with a reasonable accommodation, as set forth in count two, "require[d] little discussion" given the court's conclusion on the discrimination claim.[7] The court explained in relevant part as follows: "The plaintiff's conception of a reasonable accommodation was the conversion of a job requiring at least some level of attendance at the workplace into a job fully performed remotely. In a sense, even more extreme, she wanted to have input if not be the arbiter of what work she should be required to do. She emphatically thought it inappropriate that she was required to run errands for a principal of the firm. The plaintiff was the low person on a three person working group within the firm, headed by [Cynthia]. If the defendant, as an institution or through [Cynthia], deemed it in the firm's best interest that the plaintiff's role included running errands for the attorney—thereby allowing [Cynthia] to dedicate more of her time to her obligations as a lawyer—it plausibly may have been a practice reasonably subject to question in some objective or theoretical sense, but not in terms of whether a job accommodation should have been granted. That

---

[7] "In order to establish a prima facie case for a reasonable accommodation claim, the plaintiff must produce enough evidence for a reasonable jury to find that (1) [s]he is disabled within the meaning of the [statute], (2) [s]he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant], despite knowing of [the plaintiff's] disability, did not reasonably accommodate it." (Internal quotation marks omitted.) *Barbabosa* v. *Board of Education*, 189 Conn. App. 427, 437–38, 207 A.3d 122 (2019).

she may not have seen a need for hand delivery of documents also might have been a plausible question as to firm efficiency, but not as a function of her job that needed to be changed to accommodate her. There is no explanation as to how, when hired for a job requiring at least some presence in the office, the plaintiff can claim a reasonable accommodation would have been excusing all on-site work."

The court's conclusion rejecting the plaintiff's retaliation claim was predicated on its threshold determination that the plaintiff's accommodation request was unreasonable as a matter of law.[8] The court stated: "The plaintiff provides no authority for the proposition that there can be liability associated with a denial of an improper request for accommodation. The theme, throughout, is that the employer has no obligation to change the nature of the job, and especially attendance at the workplace, simply because an employee makes the request. . . . [T]he unreasonable request for an accommodation cannot be a shield with respect to an unsatisfactory employee, with the situation compounded by the employee's efforts to change the functions of her job in a manner inconsistent with the terms on which she initially had been hired." Accordingly, the court rendered summary judgment for the defendant, and this appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth the relevant standard of review and legal principles that govern our analysis.

---

[8] To establish a prima facie case of retaliation, a plaintiff must show "(1) that [s]he participated in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action against [her]; and (4) a causal connection between the protected activity and the adverse employment action." (Internal quotation marks omitted.) *Lassen* v. *Hartford*, 223 Conn. App. 285, 290–91 n.5, 308 A.3d 564 (2024). In the present case, the protected activity alleged by the plaintiff was her request for what she maintains constituted a reasonable accommodation.

"The standard of review of a trial court's decision grant-ing summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . [and] the moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents sub-mitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, how-ever, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendants' motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find sup-port in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Stubbs* v. *ICare Management, LLC*, 198 Conn. App. 511, 520, 233 A.3d 1170 (2020).

"Under [CFEPA] . . . employers may not discrimi-nate against certain protected classes of individuals, including those who are physically disabled." (Internal quotation marks omitted.) Id., 521. Section 46a-60 (b) provides in relevant part: "It shall be a discriminatory practice . . . (1) [f]or an employer . . . to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the

individual's . . . present or past history of . . . physical disability . . . ." Moreover, "[§] 46a-60 (b) (1) requires employers to reasonably accommodate an employee's disability." *Bartolotta* v. *Human Resources Agency of New Britain, Inc.*, 224 Conn. App. 248, 272, 312 A.3d 59, cert. denied, 349 Conn. 908, 313 A.3d 513 (2024). In addition, § 46a-60 (b) (4) makes it unlawful for any person to "discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice . . . ."

"The standard applicable to the plaintiff's claim of disability discrimination, which is based on disparate treatment, [failure to accommodate] and retaliation is the *McDonnell Douglas-Burdine*[9] model of analysis. . . . Under this framework, the plaintiff first must establish a prima facie case, then the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for its employment decision. . . . Once the defendant offers a legitimate, nondiscriminatory reason, then the plaintiff has the burden to prove by a preponderance of the evidence that the proffered reason is pretextual." (Citations omitted; footnote omitted.) *Lassen* v. *Hartford*, 223 Conn. App. 285, 290–91, 308 A.3d 564 (2024); see also *Stubbs* v. *ICare Management, LLC*, supra, 198 Conn. App. 521; *Phadnis* v. *Great Expression Dental Centers of Connecticut, P.C.*, 170 Conn. App. 79, 95, 153 A.3d 687 (2017).

As set forth previously in this opinion, the court's conclusion on all three of the plaintiff's claims rested primarily on its determination that the plaintiff's requested accommodation to work entirely remotely

---

[9] "See *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 252–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802–804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Lassen* v. *Hartford*, 223 Conn. App. 285, 290 n.4, 308 A.3d 564 (2024).

was not reasonable as a matter of law,[10] and, therefore, the plaintiff had failed to establish a prima facie case with respect to each of her claims. "To establish a prima facie case of employment discrimination pursuant to § 46a-60 (b) (1) on the basis of either a disparate treatment disability discrimination claim or a reasonable accommodation claim, a plaintiff must establish a common essential element, namely, that he or she is qualified for the position. . . . In order for an employee to be qualified, he or she must be able to perform the essential functions of the job with or without a reasonable accommodation . . . ." (Internal quotation marks omitted.) *Barbabosa* v. *Board of Education*, 189 Conn. App. 427, 437–38, 207 A.3d 122 (2019). In addition, to establish a prima facie case of retaliation, a plaintiff must show, inter alia, that she "participated in a protected activity"; (internal quotation marks omitted) *Lassen* v. *Hartford*, supra, 223 Conn. App. 290 n.5; and the protected activity alleged in this case was the plaintiff's request for a reasonable accommodation.

On appeal, the plaintiff claims that the court improperly rendered summary judgment in favor of the defendant because, inter alia, a genuine issue of material fact exists as to whether her request to work entirely remotely constituted a reasonable accommodation that did not eliminate an essential function of her position.[11]

---

[10] The plaintiff contends that "[t]here are two accommodations in play in this case: work remotely from home and a second computer monitor." In opposition to the defendant's motion for summary judgment, the plaintiff had submitted evidence that, at the end of June, 2020, she requested a second computer monitor after she experienced vision issues related to her diabetes and temporarily lost vision in one eye. The trial court's discussion of this alleged accommodation request is limited. On appeal, the plaintiff does not provide any substantive argument regarding why the court improperly rendered summary judgment on her failure to accommodate claim in light of this particular proposed accommodation. Accordingly, we limit our analysis to the plaintiff's requested accommodation of remote work.

[11] The plaintiff also claims, inter alia, that the court improperly concluded that no genuine issue of material fact existed as to whether the plaintiff was disabled and, therefore, a member of a protected class; whether the

Specifically, the plaintiff contends that working in the office was not an essential function of the job because her position initially was intended to be remote and "[t]he only job tasks that required her to be in the office were the personal errand tasks that she was doing for [Cynthia]," which "[t]he defendant admitted . . . was not a part of her job duties and responsibilities." We are not persuaded.

"[A]n accommodation is not reasonable if it, in essence, requires an employer to eliminate an essential function of a job." (Internal quotation marks omitted.) *Frantti* v. *New York*, 850 Fed. Appx. 17, 20 (2d Cir. 2021); see id. (evaluating employment discrimination claim under provisions of analogous federal law). Although "reasonableness is normally a question of fact, summary judgment may be granted in cases where . . . the plaintiff's proposed accommodation would eliminate the essential functions of the job." (Internal quotation marks omitted.) *Barbabosa* v. *Board of Education*, supra, 189 Conn. App. 446.

Neither this court nor our Supreme Court appears to have addressed the circumstances under which working remotely constitutes a reasonable accommoda-

plaintiff could establish an inference of discriminatory intent; whether the defendant's proffered reason for her termination was pretextual; and whether there was a causal connection between the protected activity and the adverse employment action as required for her retaliation claim. "Because [s]ummary judgment is appropriate where no genuine issue of material fact exists, and the defendant is entitled to judgment as a matter of law, with respect to any one element that the plaintiff is required to prove in order to prevail at trial . . . an appellate court need not address every basis articulated by a trial court in rendering summary judgment." (Internal quotation marks omitted.) *Lassen* v. *Hartford*, supra, 223 Conn. App. 291 n.6. Accordingly, because we agree with the trial court that the plaintiff has not demonstrated the existence of a genuine issue of material fact as to whether she could perform the essential functions of her position with her requested accommodation, we need not address the plaintiff's claims regarding the other elements of her claims. See id.

tion.[12] Accordingly, "[w]e look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both." (Internal quotation marks omitted.) *O'Reggio* v. *Commission on Human Rights & Opportunities*, 350 Conn. 182, 190, 323 A.3d 1048 (2024).

A determination of whether a specific job has essential functions that require in person work involves a "case-specific inquiry." *Kinney* v. *St. Mary's Health, Inc.*, 76 F.4th 635, 644 (7th Cir. 2023). "The term essential functions, which is not defined in the statutes themselves, is generally defined in [the Americans with Disabilities Act] regulations promulgated by the Equal Employment Opportunity Commission . . . to mean the fundamental duties to be performed in the position in question, but not functions that are merely marginal." (Internal quotation marks omitted.) *Tafolla* v. *Heilig*, 80 F.4th 111, 119 (2d Cir. 2023). "Under this standard, a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position . . . . Ultimately, however, the question whether a task constitutes an essential function depends on the totality of the circumstances." (Citation omitted; internal quotation marks omitted.) Id. The court must conduct "a fact-specific

---

[12] We note that, in *Barbabosa* v. *Board of Education*, supra, 189 Conn. App. 427, this court held that the trial court properly determined that the defendant Board of Education of the town of Manchester (board) was entitled to summary judgment on the claim of the plaintiff, Dianna Barbabosa, a school paraprofessional, that the board was required to accommodate her disability, which resulted in her frequent and extended absences from work, by affording her intermittent leaves of absence. Id., 434–36. In reaching its conclusion, this court explained that Barbabosa was not able to perform an essential function of her employment, either with or without her proposed accommodation, namely, maintaining regular attendance, and, consequently, the accommodation she sought was not reasonable. Id., 447–48. Thus, although *Barbabosa* addresses the issue of attendance at work in the context of a discrimination claim under CFEPA, the case does not implicate the issue presented here concerning remote work.

inquiry into both the employer's description of a job and how the job is actually performed in practice," in which it "draw[s] all inferences in favor of the non-moving party." (Internal quotation marks omitted.) Id. The court may consider, among other things, "written job descriptions, the amount of time spent on the job performing the function, and the consequences of not requiring the plaintiff to perform the function." (Internal quotation marks omitted.) *Frantti* v. *New York*, supra, 850 Fed. Appx. 20.

In the present case, the defendant submitted evidence in support of its summary judgment motion demonstrating that working in the office is an essential component of the plaintiff's job. Specifically, in her affidavit, Cynthia explained that, "[a]lthough certain of the [defendant's] practice groups were then largely practicing remotely, we ultimately determined that we needed someone capable of working in the office at least part of the time due to the number of tasks that required in-person work, including the creation and maintenance of physical files, locating documents and information contained in those files, occasional in-person meetings with clients, preparing transaction documents for execution by clients, forwarding original documents once executed or recorded, and other tasks that necessitated a physical presence in the office. Thus, while I anticipated that the new hire could work remotely as work flow and scheduling allowed, it was a requirement and condition of the position that the new hire be willing to work in the office at least part of the time. I was open to the idea that over time, as the new hire became more familiar with the requirements of the position and my practices, proficient with [the defendant's] systems, and gained an understanding of the client files, he or she could work remotely more often. However, at least during the first months of employment, I needed the administrative assistant to be present in the office most

days." Cynthia further stated that the plaintiff did not object to working in the office during the first couple of weeks while Cynthia was traveling and, initially, the plaintiff did not advise Cynthia that she had a health condition that prevented her from working in the office. As Cynthia also explained, "[h]ad [the plaintiff] done so, I would not have been able to hire her, as working from the office was an essential function of the job."

With respect to the amount of time that the plaintiff would be permitted to work remotely, Cynthia stated that, "[f]rom the outset or near outset of her employment, we had agreed that depending on scheduling of transactions, [the plaintiff] would be able to work one day per week from home. . . . I did not reject the possibility of her working additional days from home as she became more familiar with our matters and systems, but told her that I needed her in the office on the schedule to which we had previously agreed (i.e., four days per week), and that we could evaluate further when I returned to the office later in June." In his affidavit, Walsh similarly averred that "the administrative assistant position was not a fully remote position; rather, the person hired was required to work in the office at least part of the time, with the partner-in-charge ([Cynthia]) having discretion to allow the administrative assistant to work remotely depending on workflow and scheduling of transactions."

In the plaintiff's deposition testimony, submitted in opposition to the defendant's motion for summary judgment, she acknowledged that she was expected to work in the office at least part of the time and that her position was not intended to be entirely remote. Specifically, she testified that the position "wasn't fully remote," but rather "[m]ostly remote with coming into the office as needed . . . ." When asked about her understanding as to how often she would be required to be in the office on a weekly basis, the plaintiff responded: "Sometimes

none. Sometimes a few hours. Other weeks it could be I might need to go a few days that week. It was just as needed. It was open-ended as needed when it was absolutely necessary." She also explained that " '[a]s needed' was how it was phrased" during the interview process and that she would be required to go into the office "once in a while if you really need to." As to whether she was told that the position was "partially" remote, the plaintiff testified: "It was as needed; so that's a yes. That's an as needed. Partially remote? No. It was mostly remote. . . . No, it's not partially remote. It was remote with . . . an as needed to be partially in the office. The partial is more so for in the office, but it was remote and go into the office as needed."

In addition, in her objection to the defendant's motion for summary judgment, the plaintiff argued that "[t]he legal assistant job with the defendant was supposed to be *mostly* remote."[13] (Emphasis added.) Similarly, at the hearing on the motion, the plaintiff's counsel acknowledged that, although the plaintiff requested an accommodation to work "entirely" remotely, the plaintiff was told during the hiring process that her position would be "mostly" remote. Accordingly, in its decision, the court stated: "[*T*]*here is no claim that* [*the plaintiff*] *had been hired for a position that was intended to be 100 percent remote.* . . . There may be a dispute as to whether the job was intended to be mostly in office or mostly remote, but the plaintiff does not appear to contest the fact that at least some duties assigned to her required some level of physical presence in the office, at least as originally structured." (Emphasis added.)

On appeal, the plaintiff suggests that she was told, from the outset, that her position would be entirely

---

[13] In her revised complaint, the plaintiff alleged that "[t]he defendant told the plaintiff that her job would have her working in the office one to two days per week and the other days from home."

remote. Citing her deposition testimony, the plaintiff contends that Cynthia and Walsh told the plaintiff that her job would be remote.[14] In that portion of the deposition, however, the plaintiff was asked: "Did anyone from [the defendant] tell you in words or substance that your position with the firm would be *mostly* remote?" (Emphasis added.) The plaintiff responded, "[y]es," and when asked who told her that, the plaintiff responded that Cynthia and "the recruiter," Riccio, did so. Although there are some portions of the plaintiff's testimony suggesting that her position was intended to be "remote," without qualification, we do not review that testimony in isolation. As set forth previously, the plaintiff expressly testified that her position "wasn't fully remote."

With respect to the duties that the plaintiff was expected to perform in the office, she submitted evidence that, when viewed in the light most favorable to her claim, could demonstrate that there were some in office tasks that were not essential or otherwise could be done remotely. Specifically, in her deposition testimony, the plaintiff stated that she spent one third to one half of her time completing personal errands for Cynthia, which the defendant admitted, in its answer to the plaintiff's CHRO complaint, were not part of the plaintiff's job duties and responsibilities.[15] The plaintiff

---

[14] The plaintiff also refers to an email from Cynthia to Riccio, which was attached to the plaintiff's objection to the motion for summary judgment and states in relevant part: "We will be extending an offer to [the plaintiff], however, we have to figure out the appropriate start date, if she is comfortable coming into the office, or prefers to work from home." To the extent that the plaintiff contends that this email gives rise to an issue of fact as to whether the plaintiff was given the option to work from home *exclusively*, we are not persuaded. There is nothing in the record to indicate that this message was conveyed to the plaintiff at any time prior to her termination. Moreover, the plaintiff's own deposition testimony acknowledges that the position for which she was hired was not fully remote and, therefore, contradicts her suggested interpretation of the email.

[15] The defendant also denied that Cynthia had the plaintiff run personal errands for her.

also testified that she could answer phone calls remotely if given access to download the defendant's phone system onto her cell phone and she "couldn't see that [she] had to be deleting pages and manipulating documents from an office desk."

In her deposition testimony, however, the plaintiff also recognized that there were certain tasks, aside from the alleged personal errands for Cynthia, that needed to be done in the office. Specifically, the plaintiff testified that, aside from accessing Cynthia's personal files, "there might be an occasional reason to go in. That's why it wasn't fully remote." She explained: "No one can give me any good reason as to why I have to be in that office except for [Cynthia's] personal files that [were] there. That's the only thing I can come up with. Because everything else, *unless I need to go into that office to get an ink signature or to actually pick up a file that may not be available on the database . . . or to actually pick up a physical file and compare it to what's on there to make sure everything is right,* there really isn't a whole lot of reason for me to keep going into the office day in and day out and to be there all day long." (Emphasis added.) The plaintiff further stated: "It's what needs to be done that determines if I am needed to be in the office. A physical ink signature that needs to be notarized requires me to go in and physically obtain that signature and notarize it. Ink documents that are being delivered by a client that didn't email them for whatever reason and they need to be scanned, I could go in and pick up those documents, get them scanned then do what I have to do, and go home."

In light of the plaintiff's own testimony, the trial court aptly observed that "the plaintiff seems to acknowledge that her employment, from the start, required at least some level of performance of work at the office location. . . . Although she claims that some of her assignments were unnecessary or could have been assigned

to someone else in the office . . . she seems to acknowledge that some of the work-related functions she was asked to perform required physical presence in the office.''

On the basis of our review of the evidence, we agree with the trial court that no genuine issue of material fact existed as to whether working in the office was an essential function of the plaintiff's position. Although the parties' evidence conflicted as to how often the plaintiff was expected, at the time of her hiring, to work in the office—according to the plaintiff, the position was mostly remote, whereas Cynthia averred that the plaintiff was expected to work in the office most of the time—it is undisputed that the job required some measure of in person work. The plaintiff's claim that her in office tasks were "marginal" and, therefore, not essential; see *Tafolla* v. *Heilig*, supra, 80 F.4th 119; hinges on her assertion that "[t]he only job tasks that required her to be in the office were the personal errand tasks that she was doing for [Cynthia]." The plaintiff's contention, however, is belied by her own deposition testimony in which she acknowledges that there were other tasks that necessitated a physical presence in the office, in particular, maintaining physical files, scanning client documents, and meeting with clients to obtain "ink signatures" and notarize documents for real estate closings. We therefore conclude that the evidence, even when viewed in the light most favorable to the plaintiff, was insufficient to create a genuine issue of material fact with respect to this issue.

Moreover, the same evidence definitively establishing that in office work is an essential part of the plaintiff's job also establishes, as a matter of law, that the plaintiff's proposed accommodation to work entirely from home was not reasonable because that accommodation would eliminate an essential job function. See *Barbabosa* v. *Board of Education*, supra, 189 Conn. App.

448. Consequently, we conclude that the court properly rendered summary judgment in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.